# Wheeling.

SHONK *v.* KNIGHT, *et al., trustees.*

Decided April 6, 1878.

1. An injunction ought not to be awarded, which is verified only by the affidavit of an agent of the plaintiff, "that the facts and allegations contained in the bill, so far as stated therein on his own knowledge are true, and so far as stated on information, he believes them to be true." There being in the bill no facts alleged of which this agent had any personal knowledge so far as appears on the face of the bill, and no exhibits sustaining the material allegations of the bill.

2. An injunction to prevent the sale by a trustee of a tract of land conveyed by a deed of trust, ought not to be awarded where the title to the land offered for sale is undisputed and also the debt for the payment of which it is about to be sold, merely because the debtor claims that he is entitled to a conveyance from the creditor of a parcel of land adjoining. To entitle him to an injunction in such case he must further allege that the land offered for sale, will not bring a fair price unless sold in connection with the parcel of land adjoining claimed by him and also that he is unable to pay the debt and thus prevent the sale.

3. As a general rule, if the answer to a bill of injunction fully, fairly, plainly, distinctly and positively denies the material allegations in the bill and no proof is taken to sustain the bill, the court ought on the coming in of the answer to dissolve the injunction. There are some exceptions to this general rule, but it ought to be followed when great injury would result to the defendant if the injunction was continued till the hearing and no serious loss would be sustained by the plaintiff if it were dissolved, even if the cause should be decided in his favor on the hearing.

1878.
Special Term.

Shonk
v.
Knight et al.,
trustees.

4. As a general rule an injunction ought not to be dissolved till all the defendants implicated in the charges made by the bill have answered, but there are well established exceptions to this rule. 1st. The plaintiff must have been diligent in taking the necessary steps to procure the answers of all the defendants. 2d. Answers are required only of those defendants upon whom rests the gravamen of the charges in the bill, and lastly no answer need be filed if the injunction on the face of the bill ought not to have been awarded.

5. If a bill on its face shows that the plaintiff would be entitled to relief, if he had set out his title to the subject of controversy which he had apparently failed to do accidentally, he ought to be permitted to amend his bill before it is dismissed on demurrer.

An appeal from a decree of the circuit court of Kanawha county, rendered on the 18th day of December, 1876, in a cause in chancery, in which John J. Shonk was plaintiff, and Edward B. Knight and William S. Laidley, trustees, were defendants, granted on petition of John J. Shonk.

Hon. Joseph Smith, Judge of the seventh judicial circuit, rendered the decree complained of.

GREEN, PRESIDENT, furnishes the following statement of the case :

On January 24, 1876, John J. Shonk filed his bill in the circuit court of Kanawha county, against William S. Laidley and Edward B. Knight, trustees, and James H. Brown and John T. Cowen, trustees, and in their own right, the heirs of William P. Wyatt, naming them, the widow and heirs of J. Fuller Reynolds, naming them, the Cabin Creek Kanawha Coal Company, the Williams Coal Company, Benjamin H. Smith, Isaac K. Smith, Benjamin P. Morris and wife, James N. Morris and wife, Charles B. Morris and wife, John Echols, H. M. Bell and R. H. Catlett. The bill alleges, that Shonk and Reynolds (then deceased) bought five undivided ninth parts of a certain tract of land in said county on

1878.
Special Term.

Shonk
v.
Knight *et al.*,
trustees.

the waters of Cabin creek and Joe's creek, containing nine thousand five hundred and eighty acres, more or less, being the residue of the John Greene patent of sixteen thousand acres, deducting the portions conveyed by Newton Gardner, deceased. This purchase was made of John Echols, H. M. Bell and R. H. Catlett, and the deed therefor was made March 16, 1872; and at the same time they executed a deed of trust on said land to Wm. S. Laidley and Edward B. Knight, trustees, to secure the deferred payments, which deeds were at once duly recorded, and authenticated copies of them are filed with the bill. This land had, on March 4, 1872, been conveyed to Echols, Bell and Catlett by Brown and Cowan, trustees, and individually, and by all the other defendants other than the widow and heirs of Reynolds, and said companies. This deed was duly recorded and an authenticated copy of it is filed with the bill. All the deeds were delivered to the parties entitled to them at the same time, about March 10, 1872. The bill then alleges, that the legal title and possession of this land was then vested in the Williams Coal Company of Kanawha, and the Cabin Creek Kanawha Coal Company.

The deed from Brown and Cowen, trustees, and others to Echols, Bell and Catlett, conveys six thousand two hundred and ninety-two ninety-five hundred and eightieth parts of the tract of land situate in said county on the waters of Cabin creek and Joe's creek, containing nine thousand five hundred and eighty acres, more or less, being the residue of the John Greene patent of sixteen thousand acres, deducting the portions sold and conveyed by Newton Gardner, deceased, by deeds of record, and it sets out the boundaries of the land thereby conveyed, by metes and bounds. And there is in the deed a warranty of title the character of which need not be stated, except that it does not extend beyond a warranty of said interest in the tract, and that the entire quantity of land in the tract to which their title is warranted to be good is not less

1878.
Special Term.

Shonk
v.
Knight et al.,
trustees.

than nine thousand five hundred and eighty acres. And this deed on its face states that the grantors other than Brown and Cowen, trustees, had by a deed to said trustees, dated September 10, 1867, and duly recorded, conveyed said land to said trustees. The deed of Echols Bell and Catlett, conveys to Shonk and Reynolds five-ninths of this land and describes it in the same words in which the deed to them describes it and the warranty has a like qualification as the warranty to them. The deed of trust executed by Shonk and Reynolds to Laidley and Knight, trustees, also describes the tract in the same terms, except that instead of setting forth the boundaries, it refers to the deed from Echols, Bell and Catlett to Shonk and Reynolds, for the boundaries and adds, "which deed is hereby made a part of this deed for the purpose of identifying and describing said tract of land."

The bill further alleges, that during the negotiations which led to the making of these several deeds, the vendor in the first deed exhibited a plat of this land, showing the true and correct boundaries and abuttals of the residue of the Greene patent of sixteen thousand acres after deducting the parts sold by Newton Gardner, deceased, and the purchase was made both by Echols, Bell and Catlett, and by Shonk and Reynolds, under the belief that this map showed the true boundaries of this land. What purports to be a copy of this map is filed with the bill and also what purports to be a plat of the land from the courses and distances contained in these deeds. A comparison of the two maps shows that the map of the land as alleged to have been exhibited when the sale was made, includes all the land embraced by the courses and distances of the deeds and also a piece of land triangular in shape, except that the base of the triangle is a broken line, consisting of eight short lines whose courses are nearly the same. This triangle contains between four and five hundred acres of land, which the bill alleges was excluded or omitted from the

1878.
Special Term.

Shonk
v.
Knight *et al.*,
trustees.

metes and bounds in the deed, by fraud or mistake, and this was not discovered till afterwards, and that this piece of land so excluded was of peculiar and supreme value to the whole tract by reason of its position.

The bill alleges that James H. Brown the holder of one of the bonds secured by this deed of trust, had ordered the sale of this land to be made by the trustees, Laidley and Knight, and they had accordingly advertised the same. The advertisement is filed with the bill and the description of the land is that given in the deed of trust under which the sale was to be made. The bill alleges that it would be unjust and inequitable to make such sale till the deeds were corrected and reformed so as to correspond with the actual sale. And it avers that whenever they are corrected the plaintiff will promptly pay the balance of the purchase money, and the defendants have been so informed.

The bill prays that all the defendants be required to answer the bill; that the trustee be enjoined from making this sale till the further order of the court; that the deeds aforesaid be reformed and corrected, so as to set forth truly and correctly the contract of the parties; and for general relief.

The injunction was awarded as prayed for. The summons was issued only against Laidley and Knight, trustees, and James H. Brown and T. Cowen, trustees, and was returned as to Cowen, that he was not found and was no inhabitant of the county, and executed as to the others; no other summons was issued. An answer however was filed by Benj. H. Smith and Isaac N. Smith, the heirs of Matthew Wyatt and the Morrises. And James H. Brown, one of the trustees, filed his separate answer. This answer states that the land in controversy is a part of the Greene survey of sixteen thousand acres which was purchased by Newton Gardner, who conveyed to sundry persons portions of this sixteen thousand acres, leaving by the face of the deeds nine thousand five hundred and eighty acres unsold, which amount was

1878.
Special Term.

Shonk
v.
Knight *et al.*,
trustees.

charged for taxation on the commissioner's books to the heirs of Newton Gardner, and being returned delinquent for non-payment of taxes was sold by the sheriff of Kanawha county and bought by Wm. P. Wyatt who obtained a deed therefor, but the heirs of Gardner brought an action of ejectment for this land in 1859, and recovered the same. Wyatt afterwards entered this land and had it surveyed in the name of James H. Brown. By this survey, the quantity of the land was nine thousand two hundred and forty-seven acres, and a patent for it was issued to Wyatt, and he then brought an action of ejectment therefor against Gardner's heirs. And pending it, took an appeal to the Court of Appeals of West Virginia from the judgment in favor of Gardner's heirs, on the first action of ejectment. A portion of Wyatt's interest in these suits was assigned to James H. Brown for services rendered in them and an interest in these suits was also transferred by Gardner's heirs to others including J. T. Cowen, and also an interest in these suits to B. H. Smith and Isaac N. Smith for professional services rendered to Gardner's heirs in these suits. The parties afterwards compromised these suits, by which Wyatt and Brown was to have one-third of this land and the heirs of Gardner and their vendees two-thirds thereof. And to facilitate a sale of this land, all parties conveyed this land to Brown and Cowen, trustees, with power to sell the same, a copy of a portion of this deed is filed, dated September 10, 1867. The description of the land conveyed by this deed, is " the following land situate in the county of Kanawha on the waters of Cabin creek and Joe's creek and bounded as follows, (giving the boundaries as set forth in the deeds heretofore mentioned), containing nine thousand five hundred and eighty acres." The answers admit the execution of the deeds named in the bill, but they deny that they did, during the negotiations for the sale, have or caused to be prepared, a map of the lands proposed to be sold, showing the true and correct boundaries and abuttals of

1878.
Special Term.

Shonk
v.
Knight et al.,
trustees.

the residue of the Greene patent of sixteen thousand acres after abating the amount sold by N. Gardner, or that they ever exhibited such map during such negotiations; or that Echols, Bell & Catlett or Shonk and Reynolds were induced to purchase on the representation of the vendors, that said map contained the true boundaries and abuttals of said land, or that they made any such representations. And that Bell himself wrote the deed to himself, Echols and Catlett, and inserted the boundaries as in the deed to Brown and Cowen, trustees. The answers allege that Cowen, one of the trustees authorized to sell this land desired to employ one Major Hotchkiss to survey this land, that his co-trustee, Brown objected to his employment and refused to employ him. That the owners of this land were generally willing that it should be sold at $10.00 per acre, but Cowen was not willing to take less than $20.00 per acre for it. That without the authority or concurrence of Brown, Hotchkiss was employed by Cowen, trustee, to survey this land, and did have a survey of it made, but that the map made by him was never shown to Brown the trustee, though he was anxious to see it; that this map had been shown to the purchasers of the land, but they would not let the trustee, Brown, know how much land there was in the tract by this survey, though he inquired. That the fact that such a map had been made was unknown to all the vendors, but Cowen and Brown, and that Brown never did see this map. That the purchasers of this land were acting in combination with Cowen, one of the trustees, in thus concealing this survey and map, and that such concealment was made because as these purchasers knew then, what the vendors other than Cowen have since found out, that by this survey it was ascertained that the land contained twelve thousand two hundred and sixty-five acres instead of nine thousand five hundred and eighty. And by this concealment and fraud they obtained about two-thirds of two thousand six hundred and eighty-five acres more than they paid

1878.
Special Term.

Shonk
v.
Knight et al.,
trustees.

for, worth at the price they agreed to pay for it about $18,000.00. The land contained in the triangular piece which the plaintiff claims to have purchased and asks to have included in his deed by rectifying the boundaries is claimed by Coal's heirs as derived by purchase from Newton Gardner. They deny that it was included in the sale to Bell, Echols and Catlett, that being a sale by specified boundaries and this land not being included in or intended to be included in the land sold. And whatever title the vendors had to it they still have and are willing to dispose of when paid for to the plaintiff. The respondents charge that a fraud was committed on them by the suppression of this map by the purchasers and said Cowen, and concealment of the true quantity of the land, whereby they were enabled to get near two thousand acres of land more than they were really supposed by the vendors to be buying. That the trustee, Cowen, in bad faith, received from these purchasers more than twice as much per acre, as they have since learned, for his interest in said land as was paid to the *cestui que trust* and to his co-trustee, Brown; that by the original contract, the trustees only were to execute the deed, but Bell, who acted for the purchasers and drew the deed, insisted on the *cestui que trust*, signing it and giving the covenant of warranty, which was given. The answers insist that the defendants are entitled to be paid $10.00 per acre, the contract price for all the excess of land over the quantity named in the deed. That the purpose of the parties as shown by letters and telegraphic dispatches, was to sell "their interest entire and in gross, in the Cabin run tract of land, embraced in the deed of trust to Cowen and Brown, trustees," and which excludes the triangle now claimed by the plaintiff. Brown, trustee, in his answer, further alleges, that the title to this property and various maps in the ejectment causes aforesaid were submitted to Bell, who was acting for the purchasers, and the fullest and most ample information

1878.
Special Term.

Shonk
v.
Knight *et al.*,
trustees.

given to him, and he fully understood the whole matter when he wrote said deed. The answers ask that they may be taken and considered as a cross-bill; and that the plaintiff and his vendees may be considered as defendants thereto, and ask that Echols, Bell, and Catlett the heirs of Reynolds, and the complainant and his vendees be decreed to pay them $10.00 per acre for the five-ninths of said land in excess of nine thousand five hundred and eighty acres, or that said contract and deeds be rescinded and set aside upon the money heretofore paid being refunded, and for general relief. With the answer of Brown were filed numerous letters which had been written by him to Cowen and by Cowen to him, shortly before said sale and in reference to making the same, also telegraphic dispatches between them, which tend to establish some of the allegations in Brown's answer.

These answers were filed at the October rules, 1876, and the defendants gave notice that at some future day they would move the court to dissolve the injunction. No depositions were taken on either side and no replication filed to these answers. The answers were sworn to by Benj. H. Smith and J. H. Brown, and the bill by T. W. Bedford, agent, for John J. Shonk, and their oaths were all in the usual form; that the facts and allegation so far as stated on their own knowledge were true and so far as stated on information they were believed to be true.

On December 18, 1876, the court rendered this decree:

"And now at this day, to-wit: At a circuit court held for Kanawha county, at the court house thereof, on the 18th day of December, 1876, the same day and year first herein mentioned, this cause came on to be heard upon the bill and exhibits filed therewith, the joint answer of B. H. Smith and others, and the separate answer of James H. Brown, in his own right and as trustee, and exhibits filed with said answer at the December rules of this court, 1876, and the motion of said defendants made at said rule day to dissolve the injunction

1878.
Special Term.

Shonk
v.
Knight *et al.*,
trustees.

heretofore awarded in this cause, and was argued by counsel for defendants as well as counsel for complainants. Upon consideration of all which the court is of opinion to sustain said motion and dissolve said injunction, and the same is done accordingly. And the complainant desiring to appeal from said decision sustaining said motion and dissolving said injunction, upon complainant filing with the clerk of this court bond, with good security, conditioned according to law, in the penalty of $500.00, it is ordered that the execution of this decree be suspended for sixty days from the rising of this court to enable the complainant to apply for and perfect said appeal. And it is further ordered that this cause be retained as an original bill upon the docket for the further proceedings to be had therein at a future term of this court, until which time this cause is continued."

From this decree the plaintiff, John J. Shonk, has appealed to this court.

*E. W. Wilson,* for appellants:

1st. While the intention and purpose appear from the deeds of Echols, Bell & Catlett, to appellant and his co-tenant, J. Fuller Reynolds, and from appellees to Echols, Bell & Catlett (see Exhibits 1 and 3, pp. 16 and 22, printed record) to convey *"the residue of the John Greene patent of sixteen thousand acres, deducting the portions sold and conveyed by Newton Gardner, deceased, by deeds of record,"* still, until the courses, distances and abuttals, in said deeds, are corrected and made to conform to said intention and purpose, a sale under said trust deed would occasion a sacrifice to appellant on account of: 1. *A cloud upon the title* of both the appellant and his co-tenant, and the trustees, Knight and Laidley, as to between four and five hundred acres of the land, possessing too, a peculiar value, on account of location and position to the residue of of the tract. *Faulkner* v. *Davis,* 18 Gratt. 651; *Gay* v. *Hancock,* 2 Rand. 71.

1878.
Special Term.

Shonk
v.
Knight *et al.*,
trustees.

2. *A defect in the title* of appellant and his co-tenant and said trustees, for said four or five hundred acres, for reasons heretofore stated, and which it is the duty of appellees to correct and cure. *Clark* v. *Hardgrove,* 7 Gratt. 399; *Miller* v. *Argyle's ex'or et al.,* 5 Leigh 460; *Lovell* v. *Chilton,* 2 W. Va. 510. 3. Purchase would have to be made in a state of doubt and uncertainty as to boundary and quantity, "altogether unpropritious to a fair and advantageous sale." *Goare* v. *Beuhring,* 6 Leigh 585.

2d. *Fraud* and *mistake* are the gravamen of the bill. Fraud—High on Injunction, §899; Mistake—High on Injunction, §320.

3d. *All of the parties* implicated in the charge of fraud concerning the exhibition of the map as presenting the true boundaries of the land purchased, or of mistake in the description thereof, have not answered the bill. The only answers under oath are those of Benjamin H. Smith and James H. Brown. It is the appellant's right to test the personal knowledge, under oath, of all the defendants implicated in said charge. High on Injunction §909, 914, 915.

4th. Dissolution would result in a greater hardship to appellant, than continuance of injunction to final hearing can to appellees. Appellees have a perfect security for balance due to them on purchase of land, while a sale under the trust deed would not only occasion a sacrifice to appellant, for reasons heretofore stated, but would effectuate the payment of the *last installment* of purchase money, $14,370.00, to appellees, without regard to the final determination of the court as to appellant's equities alleged in the bill. High on Injunction, §899.

5th. By dissolution appellant would lose all the benefit which would otherwise accrue to him should he finally succeed. High on Injunction, §899.

6th. The facts and entire history of the case, as disclosed by the bill and answers, afford strong presumption

1878.
Special Term.

Shonk
v.
Knight *et al.*,
trustees.

that appellant will establish his claim for relief upon the hearing. High on Injunction, §900.

7th. The case as presented by the bill, is one which requires investigation, and a dissolution would result in a sale of the property, the subject of litigation, and placing the same beyond the control of the court, and would be equivalent to a complete denial of the relief sought by the bill. High on Injunction, §900.

8th. Delay of appellees in answering the bill, and seeking a dissolution, and long acquiescence in the injunction, it having been granted January 24, 1876, and the answers not filed until only five days before the commencement of the November term, 1876, of the Kanawha county circuit court, (rules under Code having been held on the last Monday of October last preceding), and motion to dissolve not made until said November term and then without notice (excepting the entry at said rules claimed to be such—see printed record, p. 31). High on Injunction, §894.

*S. A. Miller,* also appeared for appellant.

*James F. Brown,* for appellees, referred to *Schofield* v. *Cox et al.,* 8 Gratt. 533.

*B. H. Smith* and *Geo. S. Couch,* also appeared for appellees.

GREEN, PRESIDENT, delivered the opinion of the Court :

The appellant insists that the court erred in dissolving the injunction and the appellees claim that the court ought in addition to the dissolution of the injunction to have gone further and dismissed the bill. The court did not err in dissolving the injunction for several obvious reasons.

The affidavit to the bill of injunction was such that

1878.
Special Term.

Shonk
v.
Knight *et al.*,
trustees.

the court ought not to have awarded any injunction, the affidavit is in these words : "T. W. Bradford, agent for John J. Shonk the plaintiff, in the foregoing bill being duly sworn says : that the facts and allegations therein contained, so far as stated therein on his own knowledge are true, and so far as, stated upon information, he believes them to be true."

The injunction might properly have been awarded on the affidavit of T. W. Bradford, or any other person. The law does not require the affidavit to a bill of injunction to be made by the plaintiff. Our Code provides that no injunction shall be awarded unless the court or judge be satisfied by affidavit or otherwise of the plaintiff's equity, Code of W. Va. ch. 133 §3, p. 631. But no injunction can be awarded properly upon an affidavit by a third party, that the allegations of the bill he is informed and believes are true. For this ought not to satisfy the judge or court of the plaintiff's equity. T. W. Bradford is not named in the bill, and there is no statement in the bill from which it could be inferred that he had any knowledge personally or otherwise, of any of the facts stated in it. No facts then being stated in the bill on his knowledge, his affidavit is therefore simply that he believes the facts stated in the bill to be true. In the case of *Chesapeake and Ohio Railroad Co.* v. *Harlow, Huse, et al.* 5 W. Va. 579, the affidavit made to the bill of injunction was made by a third party James Montgomery, and was substantially the same as the affidavit of T. W. Bradford, and this court held it to be insufficient to justify the awarding of the injunction. This case is commented on by this Court in the *Oil Run Petroleum Co.* v. *Gale, &c.,* 6 W. Va. 542. Judge Haymond in that case thought that the action of the circuit court in granting an injunction ought not to be reversed when the affidavit was somewhat similar to the affidavit in this case and where the exhibits with the bill sustained the material allegations on which the injunction was awarded, but he was of opinion that more liberality

1878.
Special Term.

Shonk
v.
Knight et al.,
trustees.

would be shown in sustaining an order granting an injunction than in sustaining a decree refusing to to dissolve an injunction. In the present case the exhibits do not sustain any material allegation in the bill. The court therefore did not err in dissolving this injunction. There are other reasons equally clear which justify the court in dissolving this injunction. Had a proper affidavit to the truth of the allegations in the bill been made, still the court ought not to have awarded the injunction, these allegations if true not justifying the awarding of the injunction. The bill alleges that the vendors of the land, the trustees, when about to sell caused to be prepared a map of the lands they proposed to sell and exhibited the same as a true and correct map of the boundaries of the land during the negotiations for the purchase and at the time of its consummation, and that the original purchasers, Echols, Bell and Catlett, as well as the purchasers from the three plaintiffs and Reynolds relied on these representations and were induced to made the purchase thereby. And that these representations and map showed that the land they supposed they were purchasing included a triangular piece of land of four or five hundred acres which, by mistake or fraud were, by the boundaries of the land sold as set forth on the face of the deed, left out of the land conveyed. Assuming for the present that this triangular piece of land did in the language of one of the deeds constitute a part of "the residue of the John Greene patent of sixteen thousand acres, deducting the portions sold and conveyed by Newton Gardner, deceased, by deeds of record," yet it is obvious that it was not actually conveyed to the plaintiff or his vendors. For the conveyance is by metes and bounds which the bill states, do not include this triangular piece of land. And though there was added to this description of the land by metes and bounds, it "being the residue of the John Greene patent of sixteen thousand acres, deducting portions sold and conveyed by Newton

1878.
Special Term.

Shonk
v.
Knight *et al.*,
trustees.

Gardner, deceased, by deeds of record," yet this addition though false will have no effect in preventing the land described by metes and bounds from passing by the deed. On the other hand this erroneous addition to the description of the land conveyed could not enlarge the grant, so as to include all the lands included in this erroneous addition. See Lomax's Digest, vol. 2 , p. 213. The bill admits this to be the true construction of these deeds and that they only conveyed the land actually encluded in the boundaries set forth in the deeds, but it claims that in addition to this land the triangular piece of ground was also purchased, and that by accident or fraud it was not included in the conveyances. Admitting for the present that this claim in the bill is well founded does it follow that the sale by the trustees of the land within the boundaries and to which the title was undisputed would be any injury to the plaintiff. It was about to be sold to pay a portion of the purchase money admitted to be due, the title to it is admitted to be clear and indisputable, and what reason can there be for enjoining the sale, till a controversy about another piece of land adjoining it is settled? None that I can see unless it was so connected with this other piece of land that it could not be sold apart from it without sacrifice and unless the purchaser was unable to pay the balance of the purchase money and thus remove the necessity of a sale. And if the plaintiff would show a right to enjoin the sale these facts should have been alleged in the bill distinctly. His allegation in the bill on this subject is "your orator further says, that the said four or five hundred acres of land excluded as above alleged in the deeds aforesaid possess and have a peculiar and supreme value to the whole tract by reason of their location and position with reference to the residue of the tract, as shown by map filed with the bill." If this is intended as an allegation that a sale of the portion of the land conveyed by the deed and included in the boundaries set forth in the deed could not be had, except at a

Syllabus 2

1878.
Special Term.

Shonk
v.
Knight et al.,
trustees.

sacrifice, unless sold with this triangular piece of land claimed and outside of these boundaries, it is certainly alleged in a very vague manner. Perhaps this inference might be drawn from this statement, but it would certainly have been much better to have alleged distinctly this fact, upon which the plaintiff's equity so far as the obtaining of an injunction was concerned depended. But waving this objection and supposing that the sale as proposed to have been made would have resulted in a sacrifice still if it is shown by the bill, that no sale would be made if the plaintiff paid what he admitted he owed and which he was ready and able to pay, he would have no right to ask a court to stay the sale as he would be both ready and able to stop it, by doing that which could result in no injury to him under any circumstances. The bill distinctly states both the readiness and ability of the plaintiff to pay the balance due from him and then stop the sale. The language of the bill on this subject is, "that so soon as the said deeds are corrected and reformed as prayed for, the balance of the purchase money due and unpaid will be promptly paid, and your orator hereby proffers to pay the sum whenever such justice is done." If instead of thus offering to make this payment conditionally, the plaintiff had, as he alleges he was able to do, actually paid this balance of the purchase money, he would thereby effectually have prevented such sale without asking the aid of a court of equity. And in making such payment he could have sustained no loss, even if it should turn out that he was entitled to the conveyance of this triangular piece of land by such of the defendants as made the deed originally. For by the statements of the bill itself their obligation to pay the balance of the purchase money would be unaffected by the court's holding him entitled to this triangular piece of land. The bill does not allege that the boundaries named in the deeds, do not include nine thousand five hundred and eighty acres of lands and it thus admits that the plaintiff under no circumstance

1878.
Special Term.

Shonk
v.
Knight *et al.,*
trustees.

would be entitled to have any abatement of the purchase money. He should therefore have paid it, and thus avoided a sale, and failing to do so, when he admits his ability to make the payment, he had no right to ask a court of equity to stay the sale. But even if it had been out of his power to prevent the sale without risk or loss, and it had appeared distinctly that the land offered for sale would have sold better together with this triangular piece, and the bill had been properly verified, still there would have been no error in dissolving the injunction.

The allegation on which the whole equity of the plaintiff's case hinged, was the alleged mistake or fraud in inserting in the deeds the boundaries of the land sold as they were inserted in the deeds. The answers fully, fairly, plainly, distinctly and positively deny the allegation, and therefore, according to the general rule laid down by this court in *Hayzlett* v. *McMillan,* 11 W. Va. 464, the court on the coming in of such answers, ought to have dissolved the injunction, if, as was the case, the allegations of the bill were unsupported by proof. It is true there are various exceptions to this general rule, as where the plaintiff would lose all the benefit which would otherwise accrue to him should he finally succeed in the cause, or where the facts disclosed by the bill and answer afford strong presumption that the plaintiff will establish his claim for relief on the parol hearing, and it appears that he would suffer great and immediate injury by a dissolution of the injunction, or when a dissolution of the injunction would in effect amount to a complete denial of the relief sought by the bill. In these and some other cases it would be proper to continue the injunction till the hearing. But the case before us does not come within any of these exceptions, or any other exceptions that ought to be recognized. It would be obviously unjust to the defendants, to whom the balance of the purchase money is certainly coming, no matter how the case on its merits may be decided, should be delayed perhaps for years in the receipt of what it is admitted is

Syllabus 3

1878.
Special Term.

Shonk
v.
Knight et al.,
trustees.
due to them, merely to prevent a sale of property which might impose a loss on the plaintiff, when that loss could be avoided by his paying what he admits he owes and is able to pay, and must ultimately pay.

It is insisted however that the injunction was prematurely dissolved, because all the defendants had not filed

Syllabus 4
answers. ' But a plaintiff can in no case complain that an injunction has been dissolved before all the defendants have answered, unless he has used due diligence to expedite his cause, and procure the answers of all the defendants. See Mallet v. The Weybossett Bank, 1 Barb. 219 ; Depeyster v. Graves, 2 Johns. Ch. 148 ; Stoutenburgh, Day & Co. v. Peck, Pierson & Co. 3 Green Ch. 446. See Cox v. Hess, 5 Paige 85. In this case the plaintiff used no sort of diligence. He never issued a summons even against any of the defendants, except against Laidley and Knight, trustees, and Brown and Cowen, trustees. It is obvious from the bill and answers, that the trustees, Laidley and Knight, have no knowledge of the material allegations of the bill in reference to the mistake or fraud in setting forth the boundaries of the land in the deeds, and that all the allegations in the bill that they have any knowledge about, are fully admitted in the answers that are filed, so that no just complaint can be made of the court's acting on the motion to dissolve before they filed answers. It is only necessary that those on whom rests the gravamen of the charge, should answer. See cases just cited, and Billet v. Lowmason, &c. 1 Green Ch. 404. The only defendants who have any knowledge about the material and controverted facts in the case who have not answered, are Echols, Bell, Catlett and Cowen. No summons ever issued against Echols, Bell or Catlett, and when the summons was issued against Cowen, it was returned by the sheriff of Kanawha county, " not found and no inhabitant of Kanawha county." And the plaintiff never issued another summons against Cowen, or made any efforts so far as the record shows, to obtain his answer, or the an-

1878.
Special Term.

Shonk
v.
Knight *et al.*,
trustees.

swer of Echols, Bell or Catlett. The statements too, contained in the answers filed, justify the conclusion that had the plaintiff desired, he could have procured those answers. The court therefore properly acted on the motion to dissolve without awaiting the filing of those answers. If as we have seen, the injunction was improperly granted in the first instance, the defendants had a right to ask dissolution as a matter of course, without awaiting the filing of the summons. See the case above cited of *Mallett* v. *Weybossett Bank*, 1 Barb. 217.

The defendants insist that the court should have gone further and dismissed the bill upon the demurrer because, "the plaintiff in his bill alleges no interest in the subject matter of the suit, by reason of ownership, warranty or otherwise;" but on the contrary shows by his bill that he and Reynolds have conveyed the whole of said land to the "Williams Coal Company, of Kanawha, and the Cabin Creek Kanawha Coal Company, and put them in possession." The allegation of the bill on this subject, is simply "that the legal title and possession of the said tract of nine thousand five hundred and eighty acres are now vested in and held by said companies." This allegation does not show clearly that the plaintiff has no interest in the subject of controversy, but the bill does not show what the plaintiff's interest is, and if the counsel for the plaintiff should conclude that it was either necessary or better that the interest of the plaintiff should be made to appear otherwise than it does or more distinctly, the court ought to permit him to amend his bill. It ought not to dismiss it even if fatally defective in this respect, till opportunity to amend was given. I therefore express no opinion on the question whether the bill is fatally defective in this respect. The necessary parties to the trial of the cause on its merits not being before the court, it was properly retained as an original bill upon the docket for further proceeding to be had therein.

There might perhaps have been urged as an object-

1878.
Special Term.

Shonk
v.
Knight et al.,
trustees.

tion to the proposed sale of this land that the advertisement of it was not as definite as it ought to have been in this that it described it as "the five-ninths part undivided of a tract of land situate in Kanawha county, West Virginia, on the waters of Cabin creek and Joe's creek, containing nine thousand five hundred and eighty acres, more or less, being the residue of John Greene's patent of sixteen thousand acres deducting the portions sold and conveyed by Newton Gardner, which said tract is more particularly described in the deed of Echols, Bell and Catlett to said Reynolds and Shonk." The object of the trustees was to advertise the five-ninths of the parcel of land contained in the boundaries set forth in the deed of Echols, Bell and Catlett to Reynold and Shonk, and no more, while the description inserted in this advertisement might be regarded as offering for sale perhaps the triangular piece of ground in controversy. And again it does not distinctly appear how this sale was proposed to be made. The advertisement says, " they will sell the property in said deed conveyed or so much thereof as may be necessary to pay the indebtedness." It might perhaps be inferred from this that so many acres of this tract of land would be sold as was necessary to pay this indebtedness, whereas the sale ought to be of such undivided portion of the whole tract within the boundaries set out in said deed, not exceeding five-ninths of the whole as should be necessary to pay the indebtedness, &c. But the bill made no complaint of the vagueness or inaccuracy in this advertisement, and as when the order of injunction was dissolved the day of sale had passed and a new advertisement would have to be made, the court of course ought not to have regarded these or any other faults in the advertisement as presenting any reason why the injunction should not be dissolved. The decree of the circuit court of Kanawha county, of December 18, 1876, must be approved and affirmed, and the appellees must recover of the appellant their costs about this appeal in this Court ex-

pended, and $30.00 damages, and this cause must be re-manded to the circuit court of Kanawha county, to be there proceeded with according to the principles and rules governing courts of equity.

1878.
Special Term.

Shonk
v.
Knight *et al.*,
trustees.

The other Judges concurred.

CAUSE REMANDED.