# CHARLESTON.

CRESAP *et al v.* BROWN *et al.*

Submitted March 1, 1910.    Decided October 31, 1911.

1. PARTITION—*Who May Bring.*

   When one person holds the legal title to land for the joint benefit of himself and others, all having equal rights in equity, any one of them may compel partition thereof at any time. (p. 661).

2. EQUITY—*Bill—Multifariousness.*

   A bill for partition of the land by one of the equitable owners, against his co-tenants, including the one who holds the legal title, is not multifarious because it prays for the cancellation of an alleged fraudulent conveyance of the growing timber on the land, made by the holder of the legal title, and also for an accounting by him of proceeds of other sales. (p. 665).

3. TRUSTS—*Holder of Legal Title—Rights of Co-tenants.*

   Such holder of the legal title has no right to dispose of the joint property without the consent of his co-tenants. The rights of all are equal in equity. (p. 661.)

4. VENDOR AND PURCHASER—*Purchaser for Value.*

   A purchaser for value from such holder of the legal title, without knowledge of the latent equities of others, will be protected. (p. 665).

5. LIS PENDENS—*Bona Fide Purchaser.*

   The pendency of a suit, brought to settle the estate of an equitable joint owner of land, against his co-owner who holds the legal title, and others, but which does not seek to get in the legal title, or to have the rights of such equitable owner in the land adjudicated, will not defeat the rights of a subsequent *bona fide* purchaser from the holder of the legal title. The purchase, in such case, will not operate to defeat any proper decree which the court may make in the suit and, therefore, the doctrine of *lis pendens* does not apply. (p. 663).

6. PARTITION—*Decree—Sale of Land.*

   In a suit. for partition, and for accounting of proceeds, of land, it is error to decree all the proceeds to the co-tenant who holds them, and to compensate the others by an abatement *pro tanto* from his allotment of land. Each co-tenant should have his share in both land and proceeds. (p. 666).

(BRANNON, JUDGE. absent.)

Appeal from Circuit Court, Randolph County.

Bill by Gustavus J. Cresap and others against Nannie I. Brown and others. Decree for defendants, and complainants appeal.

*Affirmed in part. Reversed in part.*

*W. G. Bennett* and *Dent & Dent,* for appellants.

*S. V. Woods* and *C. W. Maxwell,* for appellees.

WILLIAMS, PRESIDENT:

Judge John Brannon, Judge Samuel Woods and C. J. P. Cresap were the equal owners of a number of tracts of undeveloped coal and timber lands situate in Barbour, Upshur and Randolph counties, aggregating several thousand acres. The legal title was held by Judge Woods. The interest of Brannon and Cresap was a latent equity, but was never denied by Judge Woods in his life time, nor by his devisees since his death. The joint interest of all, and the trusteeship of Woods, appear from two declarations in writing signed by him, one held by Woods and another by Brannon. They are the same in substance though differing a little in verbiage. The copy vouched by Woods' devisees bears date June 24, 1882, and, after reciting how, and from whom, the lands were acquired, reads as follows, viz.: "For this land so purchased, John Brannon, C. J. P. Cresap and myself were to pay equal portions of the purchase money, and of all taxes and levies charged and chargeable thereon, and of all costs and expenses attending the care of the title thereof, and of all costs and expenses of every kind and character attending the surveying dividing, selling, conveying and contracting the same, and every part thereof; and the proceeds of rents, profits and incomes thereof, shall be for the joint and equal benefit of each of us, share and share alike; and the following accounts are intended to show the details of all the matters arising out of the ownership of said lands." The accounts referred to in this paper do not appear in the record.

A number of small parcels of these lands were sold and conveyed to various persons by Woods in his life time, and some were sold by him which were not paid for, and not conveyed until after his death, when conveyances were made by his devisees. All three of the original owners are now deceased,

Judge Woods, the last survivor, having died in 1897. All of them made wills, disposing of their respective interests in the aforesaid real estate.

Samuel V. Woods and J. Hop Woods were appointed administrators with the will annexed of their father Judge Samuel Woods, deceased. Exercising the right which they claim their father had in, and exercised over, said lands in his lifetime, and having power of attorney from their co-devisees, the administrators sold the standing timber on the lands to J. B. Moore and Henry Kepple, for the cash consideration of $10.50 an acre, and conveyed the same to them by deed dated December 16, 1902. The deed was recorded in the clerk's office of Randolph county on January 27, 1903. The deed also granted the right to manufacture the timber upon the land, and to remove it therefrom.

Gustavus J. Cresap, Rachel R. Cresap and Mary B. Cresap, three of the devisees of C. J. P. Cresap, deceased, brought this suit against the executor and devisees of Judge John Brannon, deceased, the administrators with the will annexed, and the devisees, of Judge Samuel Woods, deceased, and Nannie I. Brown, one of the devisees of C. J. P. Cresap, deceased. J. B. Moore and Henry Kepple and J. B. Calkins, now composing the firm of J. B. Moore & Company, were also made defendants.

The suit has a fourfold object: (1) To partition the remaining portion of said lands, consisting now of about 3,500 or 3,600 acres; (2) an accounting against the estate of Samuel Woods, deceased, for the proceeds derived from sales of portions of said land; (3) to cancel the deed made to Moore and Kepple for the timber; and (4) to enjoin the cutting of timber.

The devisees of Judge Brannon answered, and united in the prayer of, plaintiffs' bill. So that, the suit is really a controversy between the devisees of Brannon and Cresap, respectively, on the one side, and the devisees of Samuel Woods on the other, with the right of Moore and Kemple, who claim to be complete purchasers from the Woods devisees without notice of the equities of the Brannon and Cresap devisees, to be determined as an incidental matter. Two amended and supplemental bills were filed, and demurrers were interposed to each of them on the ground of multifariousness.

A final decree was pronounced on the 20th day of November, 1908, decreeing that J. Hop Woods and Samuel V. Woods, acting for themselves and as agents and attorneys in fact for their co-devisees, had a legal right to sell and convey the timber to Moore and Kepple, and confirming the deed made to them. The court had previously awarded an injunction restraining any operations on the land by Moore and Kepple, but had subsequently so modified the order as to permit Moore and Kepple to proceed with the construction of a railroad which they had commenced to build upon the land for the purpose of removing the timber. The final decree dissolved the injunction wholly, and directed a partition to be made of the land, and permitted Woods' devisees to retain the whole of the proceeds from the timber sale, but directed the commissioners appointed to partition the land to abate from the allotment to be made to Woods' devisees, so much land as would equal in value the share of the money that would otherwise have gone to the Brannon and Cresap devisees. From this decree the plaintiffs and the devisees of Judge John Brannon, deceased, have appealed.

It is admitted by Woods' devisees in their answer that the Brannon and Cresap devisees, respectively, are equal owners of the land with themselves, but they claim the unqualified right to make sale of it whenever they may think proper. The only evidence of the trust which existed between Woods, Brannon and Cresap is the written declaration which we have quoted above. That writing does not show that Judge Woods had any greater interest in, or control over, the land than either one of his co-owners had. So far as it can be determined by the written declaration Woods was the trustee holding the legal title for the benefit of all, with no prescribed duties to be performed by him. The fact that Judge Woods did make sales of the lands, and did make conveyances therefor, without his joint owners uniting with him in such conveyances, does not prove that he had the absolute right to do so without the consent and acquiescence of his co-owners. Such sales and conveyances may have been made by virtue of an express agreement between them, relating only to those sales. But even if there was no express agreement for the sale of those lands, the subsequent acquiescence in such sales, by Cresap and Brannon, would not prove Woods' right to hold the land indefinitely and against the wish of his co-owners.

They all had equal rights, and anyone of the three parties at any time could have demanded a conveyance from Judge Woods for his undivided one-third, or could have compelled a partition. There is no evidence that Judge Woods had the unqualified right to sell. But assuming that he may have had such right, it was not such right as he could pass by will to his devisees, but only a personal trust, in the nature of a power of attorney, which would end with his death. But Judge Woods simply held the legal title as a matter of convenience, and for the mutual benefit of all three owners; he was a dry trustee with no duties to be performed which could not have been performed by either of the other joint owners, and with no extra compensation provided for such services as he might render for their joint benefit. The fact that the legal title was in him could, therefore, give him no greater right in, or power over, the land in equity than the others had. They had equal rights to the possession, and any one could compel partition.

Moore and Kepple claim to be innocent purchasers without notice of appellants' equities. They paid cash for the timber, received a deed for it from Woods' devisees, and placed it on record, January 27, 1903. The declaration of trust made by Judge Woods in 1882 was not recorded until February 7th and 9th, 1903, on the 7th in Upshur county, and on the 9th in Randolph county. This writing was, therefore, not constructive notice to them. But it is alleged they had actual knowledge of appellants' equities. This allegation is denied, and we do not think the proof sustains it. There is some testimony that a map was used by Woods and Cobb, and shown to J. B. Moore while negotiations for the sale of the timber were pending, upon which were the words "Woods, Brannon and Cresap Lands." Other witnesses deny that the map contained more than the words "Woods Lands." But even if taken as true that the map did have upon it the words "Woods, Brannon and Cresap Lands," that alone would not be sufficient notice to the purchasers that persons, other than Woods' devisees, were interested in it. The words might well have been intended as simply descriptive of the land, and might have been so understood. The map itself is not before us.

It is insisted that Cobb knew of the joint ownership, and that he was Moore and Kepple's agent in the purchase of the

land. This is denied by both Cobb and J. B. Moore who was the only member of the firm of Moore, Kepple & Company who was in West Virginia and made an examination of the land, before the purchase was completed. Cobb was examined as a witness in behalf of plaintiffs themselves, and being asked what he had to do with the purchase of the timber by Moore and Kepple, replied, "I assisted Mr. Woods in selling this timber to Moore and Kepple." J. B. Moore was asked what services Captain Cobb rendered to him in the purchase of the timber, and his reply was, "Capt. (Cobb) brought the land to us, or brought us to the land rather. He had it for sale from Mr. Woods and we bought it through him." This evidence tends to prove that Cobb was the agent of Woods rather than the agent of J. B. Moore. Cobb not being the agent of Moore, his knowledge is not chargeable to Moore.

It is asserted that the recitals in the deed from the Smith heirs to Samuel Woods, made in 1874, would put a prudent man upon inquiry which, if pursued, would have disclosed appellants' interest in the land. True, C. J. P. Cresap and wife joined the Smith heirs in the execution of that deed as grantors, but it is very clear that they did so for the express purpose of conveying the equity which Cresap then had in the land, and which he had acquired from the Smith heirs by virtue of the contract of sale which he had taken from them. The deed recites that Cresap had sold the lands to Woods, and had, by writing endorsed upon his agreement with the Smith heirs, "transferred the benefit of the said contract to the said Woods, who consented to accept the said lands upon the terms specified in said agreement and to pay for the same at the time and in the manner therein prescribed." That assignment was on the 21st of August, 1874, and the deed itself bears date the 27th of September, 1874. There was nothing in the language of the deed to indicate that Cresap retained any interest whatsoever in the land. The deed itself shows quite the contrary.

Sometime after the death of C. J. P. Cresap, who was the first of the three joint owners to die, his wife, who was made executrix, brought a suit in the circuit court of Randolph county for the purpose of settling her testator's estate. There were numerous defendants to that suit, among them John Brannon and Samuel Woods, and it is insisted, by counsel for appellant,

that Moore and Kepple took title to the timber with knowledge of the pendency of that suit in which appellants' interests were disclosed. No notice of *lis pendens* was recorded in the clerk's office of the county court, as provided by sec. 13, ch. 139, Code (1906), even granting that the suit was a proper one for such notice, and the suit itself was not of such a nature that its pendency alone could operate to affect Moore and Kepple's rights. The common law doctrine of *lis pendens* does not involve the principle of constructive notice, but rests upon public policy, and grows out of necessity. It is the application of a rule intended to prevent the defeating of the judgment, or decree, of the court, respecting the rights of some party to the suit whose interest in land is therein litigated, and whose right is determined by the decree of the court, by the purchase of the land from a party to the suit, by a stranger even though he has no actual knowledge of the pendency of such suit. The right to be protected must be directly involved, and must be such a right as the decree of the court intends to determine and protect. The doctrine has no respect for the rights of *bona fide* purchasers, in fact it denies them any rights, and operates very harshly upon them, hence the law proceeds upon the principle of *strictissimi juris* in applying the doctrine, when the effect is to defeat the rights of such purchasers. 25 Cyc. 1452; *White* v. *Perry*, 14 W. Va. 66, and cases cited in opinion by Judge GREEN, on page 76.

The suit by Cresap's executrix was not brought for the purpose of obtaining legal title from Woods to Cresap's interest in the lands. There was no controversy over the title, the respective rights of Woods, Cresap and Brannon were not the subject of that litigation. True, the bill alleged that Cresap's estate had a third interest in the Smith lands, and that Woods held the legal title, but it prayed for no relief whatever with respect to those lands. It only prayed for an accounting, by Woods, for Cresap's share of the proceeds derived from previous sales. Woods answered admitting that he held a number of unpaid obligations against purchasers of portions of the land, and averred that proceeds from sales, which had been collected, had either been paid to Cresap in his lifetime, or to his executrix, since his death. So far as it appears, the decrees in the Cresap case left the title, and the interest of the respective parties, in the joint lands, just as they were before the suit was

brought. It cannot, therefore, be said that the purchase of the timber by Moore and Kepple would have the effect to defeat, in any manner, the operation of the decrees which the court has made, or any which it may yet properly make upon the state of the pleadings, in the Cresap suit, provided it is still pending. And, unless the purchase of the real estate, pending litigation, operates to defeat the decree of the court with respect to such real estate, the doctrine of *lis pendens* can have no application to *bona fide* purchaser pending the litigation. The suit by Cresap's executrix did not directly affect the title to the land in question, and, moreover, was not intended to do so; and, therefore, the doctrine of *lis pendens* cannot operate to defeat the rights of Moore and Kepple, who appear to be *bona fide* purchasers. *Davis* v. *Christian,* 15 Grat. 11; 25 Cyc. 1454, and numerous cases cited in foot note 54.

The bill for partition is not multifarious because it asks for an accounting against the Woods estate and for the cancellation of the Moore and Kepple deed. Such relief is properly incidental to and not inconsistent with, the suit for partition. Of course, a partition suit cannot be made a substitute for ejectment. But Moore and Kepple are privies in estate with one branch of the co-tenants, and if they had had notice of appellants' equities, their deed could have been properly set aside, as an incident to the partitioning of the land, under section 1, chapter 79, Code (1906). *Humphrey* v. *Foster,* 13 Grat. 653; *Rust* v. *Rust,* 17 W. Va. 901; *Hudson* v. *Putney,* 14 W. Va. 561; *Cecil* v. *Clark,* 44 W. Va. 659; Code of West Virginia (1906), ch. 79, sec. 1. The demurrers to the amended bills were, therefore properly overruled.

Moore and Kepple's title was properly held to be good, but the reason assigned by the circuit court for so holding is erroneous. The court held that the heirs of Samuel Woods, deceased, had a right, under the trust agreement between him and his joint owners, to make sale and that he passed such right to his devisees. But, as we have hereinbefore said, he had no such absolute right, but was bound to respect the wishes of those jointly interested with him, and whatever right to sell he may have had was a formal one which terminated at his death. The true reason for holding Moore and Kepple's title to the

timber good, is that they were complete purchasers for value, without notice of appellants' equities.

It appears that the price received for the timber was a fair and reasonable one at the time the sale was made, and that the Woods devisees acted in good faith in making it, believing they had the legal right to do so.

The fact, however, that Moore and Kepple obtained good title to the land is no reason why the court should have allowed the Woods devisees to retain all that purchase money. The decree permits them to retain the entire proceeds of the sale, and compensates the other joint owners by abating from the allotment of Woods' share in the land an amount equal in value to the share of the others in the funds. This was clearly wrong. Wood's devisees admit the rights of the Brannon and Cresap devisees to participate in said fund, and, in their answer, express their willingness to pay to them their respective shares, as soon as the amounts thereof can be properly ascertained.

The decree should have directed an accounting for all the proceeds, whether derived from the sale of lands or timber, in which the three estates were jointly interested; and should have directed a partition of the remaining lands to be made among the three sets of devisees, in three equal parts, having respect to value instead of in the manner provided. In respect to these matters the decree will be reversed, and in all other respects it will be affirmed, and the cause will be remanded to the circuit court of Randolph county for further proceedings in the manner herein indicated.

*Affirmed in part.   Reversed in part.*