# CHARLESTON.

E. Clyde Scott *et al. v.* Mortgage Service & Realty Company *et als.*

(No. 6200)

Submitted October 30, 1928.   Decided November 13, 1928.

*Ward & Sanders,* for appellants.
*Dillon, Mahan & Holt,* for appellees.

Woods, Judge:

This is a suit in chancery against Mortgage Service and Realty Company, a corporation, its directors, and others, for

the purpose of having the assets of said corporation marshaled and applied to the payment of its debts, and a receiver appointed to take charge of the assets and wind up its business, as provided for in sections 58 and 59, Chapter 53, Code, and, as ancillary thereto, to enjoin certain of the defendants from the collection of certain notes executed by the plaintiffs.

The injunction was awarded and a receiver appointed on application. Joint and separate demurrers and answers to the bill were filed, and plaintiffs, by leave of court, filed an amended and supplemental bill. After a motion to dissolve the injunction and discharge the receiver on the ground of insufficient notice was overruled, the defendants demurred to the plaintiffs' bill and amended and supplemental bill, assigning as grounds therefor, among other things, that the bill is multifarious and that it does not state a cause of action, and moved that the preliminary injunction be dissolved and the receiver discharged. The trial court after due consideration sustained the demurrers on the ground that the bill was multifarious and did not state a cause of action, and dismissed it. It is from this decree that the plaintiffs appeal.

The averments of the bill and amended and supplemental bill are in substance as follows: Prior to October 22, 1925, the date of the incorporation of the Mortgage Service and Realty Company, C. F. Lyda and J. G. Ridinger were engaged as partners under the firm name and style of Mortgage Service and Realty Company and also did business under the style of Lyda and Ridinger. Their business was that of writing insurance and acting as agents for persons lending money, for which they received a brokerage or commission. This latter business was put into the corporation, but the two men continued to do business under the firm name and style of Lyda and Ridinger, loaning money for persons and securing loans for others, for which they received a commission. This brokerage or commission, under an agreement, belonged to the corporation, which was operated for the benefit of Lyda and Ridinger. The corporation secured from plaintiffs' notes payable to themselves without any consideration therefor, some of which are now in the possession of defendants Lewis, Wilson, Gray and Falconer, who claim to be holders for value.

The corporation carried insurance to the amount of some $90,000.00 on the life of C. F. Lyda. The several insurance policies were transferred to Lewis, Wilson, Gray and Falconer, to secure them in the payment of notes to them by Lyda and Ridinger and the corporation by endorsement or otherwise. Plaintiffs have been compelled to pay a number of such notes. They are in fact creditors of the Mortgage Service and Realty Company and said partnership of Lyda and Ridinger. Lyda died November 24, 1926. The several defendants aforesaid, including Ridinger, as well as the administrators of Lyda, deceased, have combined, conspired and agreed among each other, to collect on said insurance policies so assigned as aforesaid, and to collect on said notes as well, and for the purpose of carrying out this conspiracy and agreement the said stockholders held a meeting and surrendered their charter, but have not caused funds to be set apart, either in whole or in part, for the payment of any of the debts of said corporation, and said stockholders have not taken any steps to secure the payment of the debts of the corporation.

The cases upon the subject of multifariousness are extremely various, and the courts in deciding them, seem to have considered what was convenient in particular circumstances, rather than to have attempted to lay down any absolute rule. However, a bill will not usually be regarded as multifarious where the matters joined therein, though distinct, are not absolutely independent of each other, and it will be more convenient to dispose of them in one suit. *Nulton* v. *Isaacs*, 30 Grat. 738; *Almond* v. *Wilson*, 75 Va. 613; *Hill* v. *Hill*, 79 Va. 592; *Alexander* v. *Alexander*, 85 Va. 353; *Saunders* v. *Bank*, 113 Va. 656; *Ross' Adm'x.* v. *Ross*, 72 W. Va. 640; *Johnson* v. *Sanger*, 49 W. Va. 405; *Dudley* v. *Niswander*, 65 W. Va. 461; *North American Coal Co.* v. *O'Neal*, 82 W. Va. 186. The question as to what demands may properly be asserted in the same suit rests largely upon the circumstances of each particular case, and is subject to no general or inflexible rule. The objection of multifariousness does not go to the merits but merely raises a question of convenience as to which the court is called upon to exercise its discretion. The reason for the rule against multifarious-

ness most usually given is the protection of defendants from unnecessary expense. Other objections such as complexity of issues, delay, inconvenience, have also been raised.

From the allegations of the bill in the instant case, it is apparent that the business of Lyda personally and that of Lyda and Ridinger, as partners, are so interwoven with the workings of the Mortgage Service and Realty Company, of which C. F. Lyda, Irene D. Lyda, his wife, J. G. Ridinger, H. M. Ridinger, his wife, and C. E. Mahan, Jr., were directors and stockholders, that it is impossible to separate them. And while the bill does in effect ask for the cancellation of the notes executed by the plaintiffs as aforesaid, and for other relief, yet the basic object of the bill is the winding up of the corporation under section 58, Chapter 53, Code, providing that where a corporation is dissolved it shall set aside a sufficient sum for the payment of creditors, and that on failure to do this any creditor may be permitted to bring suit and ask appointment of a receiver. On this score alone the bill will support a good cause of action. In accordance with the aim of equity to administer complete relief in one suit, a bill is not multifarious so long as it shows a single object and seeks to enforce a single right, although that enforcement demands an investigation of several matters, and relief of a complex character and consisting of different elements. *Ross' Adm'x.* v. *Ross, supra; Sult* v. *Hochstetter Oil Co.,* 63 W. Va. 317; *Oney* v. *Ferguson,* 41 W. Va. 568. The court will in a single suit investigate and determine all questions incidental to the determination of the main controversy, and will grant all relief incidental to the accomplishment of the main object of the bill. *Ropar* v. *Ropar,* 78 W. Va. 228; *Cresap* v. *Brown,* 69 W. Va. 658. However, although other incidental relief is sought by the bill, we do not feel called upon to rule thereon under the present state of the record. If there be diverse claims shown not to be proper, as the litigation progresses, they may be dismissed from the operation of the suit without injury to the litigation. Under the circumstances we cannot say that the bill is multifarious, and must reverse the decree of the lower court for dismissing the bill on that ground.

It is not clear whether the trial court dissolved the injunction and dismissed the receiver on the ground that they fell with the bill, or whether the action was prompted by the showing made on the bill and answer. It is a general rule that, where the answer fully, plainly, distinctly and positively denies the material allegations of the bill, the injunction should be dissolved on motion in absence of proof of such allegation. *Cox* v. *Douglass,* 20 W. Va. 175. This general rule, however, is subject to various exceptions, as is said by JUDGE GREEN in the case of *Shonk* v. *Knight,* 12 W. Va. 667, 683: ''Where the plaintiff would lose all the benefit which would otherwise accrue to him should he finally succeed in the cause, or where the facts disclosed by the bill and answer afford strong presumption that the plaintiff will establish his claim for relief on the parol hearing, and it appears that he would suffer great and immediate injury by the dissolution of the injunction, or when the dissolution of the injunction would, in effect, amount to a complete denial of the relief sought by the bill. In these and some other cases it would be proper to continue the injunction till the hearing.'' In 10th Enc. Prac. 1067, the law is stated to be: ''When a motion is made to dissolve an injunction because of the denials in the answer, if the Chancellor can see that the dissolution of the injunction may involve irreparable mischief to the plaintiff or that, in the event of the plaintiff maintaining the truth of his version of the matter in controversy, he will have been subjected to greater injustice or inconvenience by the dissolution of the injunction before the final hearing than the defendant can be exposed to by a continuance of the injunction, or that there is special propriety, under the peculiar circumstances of the case, in maintaining the *status quo* between the parties until the dispute between them can be fully determined on the evidence, he may, and often will, in the exercise of the discretion with which he is invested, retain the injunction until a final hearing can be had on the merits.'' The injunction in the instant case is merely ancillary to the relief sought, its object being to preserve the status of the property until the final disposition of the case. The applicability of the foregoing principles to the case under consideration is clearly

apparent. The section of our statute under which this case is brought makes provision for the preservation of the assets of a dissolved corporation, as in the case here.

The decree is therefore reversed and the cause remanded.

*Reversed and remanded.*