# CHARLESTON.

## E. G. KIMMELL *v.* M. R. TWIGG.

Submitted April 12, 1921.   Decided April 26, 1921.

1. EXCHANGE OF PROPERTY—*Induced by False Representations as to Value of Corporations Stock May be Canceled.*

   Equity will take jurisdiction to cancel a contract and set aside a deed for land induced by the false and fraudlent representation of defendant as to the value of stock in a corporation given by him in part payment for the land, as to the assets of the corporation and the dividends it will likely pay, unknown to the owner of the land, but relied on by him when entering into the contract.   (p. 535).   .

2. **CANCELLATION OF INSTRUMENTS**—*To Bar Relief in Equity. Legal Remedy Must be Adequate, and Equity Will Grant Relief, Where Adequacy of Legal Remedy Doubtful.*

To justify denial of relief in equity in such case the remedy at law must be as adequate, certain and effective as in equity, and when this is doubtful, a court of equity will assume jurisdiction to grant the relief. (p. 535).

3. **CONTRACTS**—*One Making False Representations Inducing Contract is bound Thereby, Whether He Knew Their Falsity or Not.*

If ignorant thereof, one dealing with another may rely on the latter's representation as to the facts pertaining to the subject matter of the contract, whether or not he actually knew the falsity of his representation, for he is as much bound thereby as if he actually knew them to be false. (p. 536).

4. **SAME**—*Delay Defeats Rescission Only Where Disadvantage Has Been Caused Defendant or Where Waiver by Plaintiff Presumed.*

Delay in suing to set aside a contract so fraudulently procured which will defeat recovery is such as has worked disadvantageously to defendant, or such as will raise the presumption that plaintiff has waived his rights. (p. 537).

Appeal from Circuit Court, Mineral County.

Suit by E. G. Kimmell against M. R. Twigg. Decree for plaintiff, and defendant appeals.

*Affirmed.*

*Harry G. Fisher,* for appellant.
*R. A. Welch,* for appellee.

MILLER, JUDGE:

Plaintiff and defendant are brothers-in-law. The object of the bill is to cancel and have declared null and void a deed executed by plaintiff and his wife on January ——, 1919, whereby they conveyed to defendant a tract of 56 acres, more or less, of land in Mineral County, and to quiet title thereto, and for general relief. From a decree for plaintiff, defendant appeals.

With his bill plaintiff tendered in court and to defendant the sum of $400.00, cash received by him from defendant,

and the certificate issued to plaintiff by the Maryland Lumber Company for ten shares of its capital stock in lieu of the certificate for ten shares thereof previously owned and held by defendant and assigned by him to plaintiff in consideration for the grant of said land to him, and also the sum of $460.00 received by plaintiff from the same company thereafter as disbursements of its capital and payment of interest for the years 1918 and 1919.

The substantial grounds alleged and relied on by plaintiff in his bill are: First, that defendant, being then the owner of said shares of stock, and as an inducement to plaintiff to convey him said land, falsely represented that he as owner of said shares had received $930.00 in dividends thereon during the year 1918, namely, one of $15.00, one of $75.00, one of $90.00, one of $300.00, and three of $150.00 each, and that he had recently been offered $2,000.00 for said stock and that it was in fact worth $2,000.00; Second, that he falsely represented that said Maryland Lumber Company then had 10,000,000 feet of cut lumber on its yards and still owned sufficient timber to supply it for the term of two years, and would probably declare as large dividends during the ensuing year as it had declared in the year 1918.

It is further alleged that plaintiff being ignorant of the truth of said representations, relied thereon, and was induced thereby to part with said land, while defendant well knew that they were false, and knowingly and fraudulently represented them to be true, for the purpose and with the intent of inducing plaintiff to so convey him said land; that said land was worth $2,600.00, and said stock was not worth anything beyond what plaintiff subsequently received thereon, namely, $460.00; that said company had not, as falsely represented by defendant, declared dividends by way of profits, as pretended, during the year 1918, but mainly as dividends of capital in process of liquidation; and that as a matter of fact it had no lumber on its yards, nor any timber whatsoever out of which it could manufacture lumber and pay dividends during the ensuing year of 1919, as falsely and fraudulently represented by defendant with the purpose and intent aforesaid.

Defendant demurred to the bill, and at the same time filed his answer thereto. The first charge relating to his. representation as to dividends paid in 1918, he denied, but with equivocation and not categorically, as called for by the bill. His denial is "that he told plaintiff that he had received dividends as mentioned in said bill." But the proof is uncontroverted that defendant did receive dividends substantially as alleged, of which at least $500.00 in the aggregate was on capital, not profits, the checks so showing, and of which defendant had notice thereby; and the evidence is clear that he also knew that the company was then in process of liquidation and that it had no lumber on the yards or timber for manufacturing other lumber.

Defendant made no pretense of denying in his answer the false representations imputed to him in the bill, regarding the lumber on the yards or timber on hand for future manufacture. These allegations were unanswered by the pleadings or testimony of defendant, except the general denial of the answer of all allegations not specifically denied. But the evidence of the plaintiff is complete, and the averments of the answer are unsupported by any evidence on these vital issues presented by the bill. It is true defendant says in his answer that he knew nothing of the condition of the Maryland Lumber Company, if true as alleged; but the evidence satisfies us that he was fully cognizant of those conditions, from reports mailed to him and received by him or his wife, as well as from the checks for the dividends paid him, and otherwise, and that he did falsely represent them to plaintiff substantially as alleged, with fraudulent intent, as charged in the bill. The evidence is clear on these points, and we deem it unnecessary to detail it here.

The principal effort of defendant to defeat the plaintiff on these grounds was to show that he had as much knowledge of the affairs of the lumber company as himself, relying mainly on the fact that some eight years prior to the time of the present transaction plaintiff and his wife had owned stock in said company and had made a profit thereon. But their uncontradicted evidence is that they had sold their stock

years before and had no subsequent knowledge thereafter of the business or property of the company, except what they derived from defendant at the time of the transaction involved, but knowing what plaintiff's experience was when he and his wife did own stock and trusting and relying on defendant's false representations, he was induced to believe that the value of the stock was as defendant then represented it to be.

The only ground of demurrer assigned and relied on is that the law furnished plaintiff an adequate remedy. The relief sought was founded on the alleged fraud of defendant in misrepresenting the value of the stock and the facts on which its value depended. Generally, equity will take jurisdiction to relieve against fraud. It is only where the fraud alleged will support an action for fraud and deceit, or furnish a complete defense to suits or actions on notes or other contracts, that equity will deny relief. *Big Huff Coal Company* v. *Thomas*, 76 W. Va. 161. How could plaintiff's damages be as adequately measured by a money decree as by the cancellation of the deed and placing the parties in statu quo? The actual value of the stock at the time could not have been ascertained, nor was the land of such certain value as to furnish a true basis for such decree. To deny equity jurisdiction the remedy at law must be as adequate, certain and effective as in equity. When it is doubtful whether or not there is an adequate remedy at law, a court of equity will take jurisdiction. *Nease* v. *Insurance Company*, 32 W. Va. 283; *Carney* v. *Barnes*, 56 W. Va. 581; *Warren* v. *Boggs*, 83 W. Va. 89. Where a person has been induced by fraud to buy from another stock in a bank which shortly thereafter is adjudged insolvent, he may institute and maintain a suit in equity for rescission of the transaction and repayment of the consideration therefor, notwithstanding the existence of a concurrent remedy at law. *Heater* v. *Lloyd et al.*, 85 W. Va. 570, 102 S. E. 228. This case is particularly applicable to the concrete case presented here. In the case made here the difference between the represented value of the stock and its actual value is so grossly out of proportion as to

shock the moral conscience. In such cases we have held that equity will take jurisdiction to cancel the contract of sale. *Billups* v. *Montenegro-Reihms Music Company,* 69 W. Va. 15. We think the demurrer was properly overruled.

But was the decree right on the merits of the case presented by pleadings and proofs? Assuming that the evasive answer of the defendant relating to dividends received by him for the year 1918, and his general denial, not excepted to, of the allegations of the bill respecting the value of the stock, the amount of lumber on hand, and of timber owned by the company, the evidence of plaintiff, already indicated, fully establishes the main facts alleged for the relief decreed.

Again it is said on behalf of defendant that plaintiff was as fully acquainted as he was with the condition of the Maryland Lumber Company, or could have ascertained the facts by inquiry. But the law is that one dealing with another, and ignorant of the facts represented, may rely thereon and is not bound to make inquiry. *Staker* v. *Reese,* 82 W. Va. 764:

But if it be true, as claimed by defendant, that he was ignorant of the facts pertaining to the business of said lumber company, yet if he represented them falsely and the plaintiff relied thereon and was induced thereby to part with his farm, defendant is as much bound by his false representations as if he actually knew them to be false. *Dickinson* v. *Railroad Company,* 7 W. Va. 390; *State* v. *Berkeley,* 41 W. Va. 455; *Tulley* v. *Poteet,* 62 W. Va. 231.

Another argument presented on behalf of defendant is that the farm deeded to him was not worth over $1,000.00, and that his cash payment together with the amount realized by plaintiff by way of dividends on capital about equaled the value of the land. The subsequent dealings of defendant respecting the land, the value placed by him thereon in subsequent propositions to sell it, together with other evidence in the case, evidently satisfied the court that it was worth much more than the sum of the cash payment and the amount paid plaintiff in dividends. In this conclusion we

think the court's finding was justified. Besides, in this uncertain state of the value of the land and stock, plaintiff was entitled to his land procured from him by the false representations of defendant. It was not a question of the equality in values of the land and stock, but of plaintiff's rights to the benefit of his bargain based on the representations of the defendant as to the value of the property he was giving in exchange for the land.

Another point urged by defendant to reverse the decree is that plaintiff delayed suit for months after discovering the fraud, received the dividends paid him on capital, and thereby accepted the benefits of the transaction, by which he is estopped from rescinding the contract. The answer is that shortly after the transaction, on discovery of the fraud, plaintiff offered to return to defendant the cash paid and stock transferred in exchange for the deed, and demanded a reconveyance of the land, which was refused. His acceptance of the dividends made on the capital in liquidation amounted to nothing more than the preservation of the property for defendant after he had refused return of the stock. Plaintiff was prompt to demand rescission of the contract. Nothing was done by plaintiff thereafter to change the situation of the parties. Defendant never recorded his deed from plaintiff. Delay which will defeat recovery is such as has worked disadvantageously to the other party, or such as will raise the presumption that plaintiff has waived his rights. *O'Neal* v. *Moore,* 78 W. Va. 296, 307, and cases cited. The delay shows no disadvantage to defendant. Plaintiff demanded rescission and cancellation by defendant almost immediately after the transaction. Defendant had notice of the intention of plaintiff to sue if reparation of the wrong was not made by him.

We find no error in the decree calling for reversal, and the same will be affirmed.

*Affirmed.*