# CHARLESTON.

CHERRY RIVER BOOM & LUMBER CO. *v.* SHELTON L. REGER
*et als.*

Submitted January 11, 1922.  Decided February 14, 1922.

1. QUIETING TITLE—*One in Actual Possession of Superior Title May Sue to Remove Cloud, Notwithstanding Remedy in Ejectment and Need Not Aver That He is About to Institute Law Action to Try Title.*

    One in actual possession of lands under superior title thereto may sue in a court of equity to remove a cloud from such title, notwithstanding one's statutory remedy in ejectment. That statute, section 14, chapter 90, Code, 1918, does not oust equity of its jurisdiction, and one need not aver in the bill to remove such cloud that plaintiff has instituted or is about to institute an action at law to try the title to said lands. (p. 256).

2. EQUITY—*Bill to Remove Cloud Held Not Multifarious for Joining Two Defendants Claiming Interests Under Separate Deeds.*

    A bill to remove as clouds on title certain adverse claims to separate tracts of land, made by two defendants claiming interests under separate deeds, but which alleges that each of the defendants is interested in the claim of the other, and that they are confederating together for the purpose of defrauding plaintiff of its title, is not multifarious because it makes both claimants parties and asks for an adjudication as to such claims. (p. 256).

3. PRINCIPAL AND AGENT—*Deed Vesting Title of Number of Persons in Trustee Held a Valid Power of Attorney Binding All Signing Parties.*

    A deed, having for its purpose the vesting of the title and
90 W. Va.

rights of a number of persons named in the caption as own-
ing individual interests in several tracts of land, in one trus-
tee to facilitate the sale of such tracts, and which by ex-
press terms authorizes the trustee to make such sale and
to execute the necessary conveyances therefor, is a valid
power of attorney, binding until revoked upon all of the par-
ties properly executing the same, as to all of the tracts de-
scribed in the deed; notwithstanding such tracts are de-
scribed in separate paragraphs thereof, each with its own
granting clause and granting parties, and that certain of the
signers, owning interests in a particular tract, are not named
as grantors in the paragrah covering that tract.    (p. 261).

4.  QUIETING TITLE—*Tenant in Common May Sue to Remove Cloud
    Without Including Cotenants as Coplaintiffs.*

    One of several tenants in common may sue in equity to re-
    move a cloud upon the title of the land in which he has an
    interest, though his cotenants are not included as coplain-
    tiffs with him.   (p. 263).

Certified Questions from Circuit Court, Kanawha County.

Suit by the Cherry River Boom & Lumber Company
against Shelton L. Reger and others.  Defendants' separate
demurrers overruled, and question certified for review.

*Affirmed.*

*Morton & Wooddell,* for plaintiff.

*D. H. Hill Arnold,* and *U. G. Vogian,* for defendants.

MEREDITH, JUDGE:

This suit was instituted in the circuit court of Pocahontas
county against Shelton L. Reger, John Chattaway, and Mel-
vina Hamrick, and the grandchildren and heirs at law of Jo-
seph Hannah, deceased, and the children and heirs at law of
John B. Hannah, deceased, and the West Virginia and Pitts-
burg Railroad Company.  By order therein it was trans-
ferred to the circuit court of Kanawha county; that court
overruled the separate demurrers filed by defendants, Shelton
L. Reger and John Chattaway, and the questions arising
thereon were certified to this court for review.

The suit was brought for the purpose of quieting plaintiff's
title to three tracts of land in Pocahontas county, containing

28,500 acres, 2216 acres and 575 acres respectively, to cancel certain deeds under which Reger and Chattaway claim title to interests in said lands, and a certain lease under which defendant, Melvina Hamrick, claims to hold the 2216 acre tract, and to enjoin said last three named defendants from cutting, destroying, wasting, or removing timber on any of said lands or. from exercising acts of ownership or possession thereof, and to obtain general relief.

The grounds of the separate demurrers are substantially the same and are as follows:

1.   That the bill does not aver that the plaintiff has instituted or is about to institute an action at law to try the title to said lands.

2.   That the bill is multifarious, in that it joins the heirs of John B. Hannah, deceased, and the heirs of Joseph Hannah, deceased, and does not ask any relief against them, and also joins Reger and Chattaway, claiming adverse interests in two separate tracts of 575 acres and 2216 acres.

3.   That the bill shows that defendant Chattaway has actual adverse possession of the 2216 acre tract. ·

4.   That plaintiff has an adequate remedy at law.

5.   That the bill shows on its face that plaintiff is not the sole owner of said lands.

6.   That there is no equity in the bill.

The bill alleges that the plaintiff is the legal and equitable owner of the surface and the timber thereon of a large boundary of land in Pocahontas county, including within the exterior boundaries numerous original grants, among which are the three tracts named; that these tracts were conveyed to it by the defendant, the West Virginia and Pittsburg Railroad Company, that company reserving the coal and other minerals and certain rights and easements over the surface; that the plaintiff is the fee simple owner of the surface and timber in said three tracts except that there is outstanding in the defendant grandchildren and heirs at law of Joseph Hannah, deceased, and the children and heirs at law of John B. Hannah, deceased, an undivided 1/12 interest in the 575 acre tract; that plaintiff has actual possession of said lands, good and valid title thereto, and traces its title from the Commonwealth

of Virginia, and exhibits with the bill the various grants and muniments of title, and alleges actual, open, notorious, exclusive and adverse possession of said lands for the statutory period of limitations, under color and claim of title and that its title has not been forfeited, and that all adverse claims and titles forfeited by virtue of the Constitution and laws of this state have been transferred to plaintiff and those claiming with it.

That notwithstanding plaintiff's valid title, the defendants, Reger and Chattaway, fraudulently conspired together to defraud plaintiff of its title, by causing one, Edward Breece, and one, Harvey Miller, to convey to Chattaway interests in a portion of said lands, consisting of 2216 and 575 acres, by deed entered of record; that the title attempted to be conveyed had long prior thereto been forfeited and vested in the plaintiff; that they also fraudulently induced some of the heirs of John Yeager, deceased, to convey to said Reger an alleged interest in said 2216 acres, which had long prior thereto been conveyed to plaintiff's predecessors in title, and caused said deed to be recorded; that they also procured a deed from certain other parties, representing themselves to be the heirs of David Hannah, deceased, conveying to said Reger what purported to be their interest in said 2216 acres and 575 acres, a part of plaintiff's lands, and caused same to be recorded; that they further fraudulently caused Vera Bledsoe and others representing themselves to be heirs of Emma M. Beard, deceased, to convey to said Reger their interests in said three tracts of land, the bill averring that all of the interests attempted to be conveyed had long prior thereto been conveyed to plaintiff's predecessors in title by deeds duly executed and recorded; that the said Reger and the said Chattaway were confederating and conspiring together to defraud plaintiff of its title and that each was interested in the claim or claims made by the other, and that Reger acting for said Chattaway, caused a lease to be executed by Chattaway to the defendant, Melvina Hamrick, for the 2216 acres, and which lease was recorded, and that they and their agents and employees were destroying valuable timber and committing acts of waste and trespass on the lands owned by plaintiff; that

all of said instruments constitute clouds upon plaintiff's title, and prays that said instruments may. be cancelled and annulled, and prays for an injunction to restrain the cutting of said timber.

The bill clearly avers that plaintiff has legal title and actual possession. According to the bill, the plaintiff has entered upon the lands, erected dwelling houses thereon, cleared, fenced and cultivated portions thereof, and the same are now occupied by its tenants, agents and employees.

Does equity have jurisdiction? This court held in the case of *Whitehouse* v. *Jones,* 60 W. Va. 680, 55 S. E. 730, (Syllabus, point 1): "One in actual possession of land under superior title may go into a court of equity to remove the cloud over his title arising from a claim under color of title thereto by another under an inferior adverse title. That he might sue in ejectment does not deny him jurisdiction in equity."

This disposes of the first point raised by demurrer, that the bill does not show that the plaintiff has instituted or is about to institute an action at law to try the title.

The second objection raised is that the bill is multifarious, in that it joins the heirs of John B. Hannah, deceased, and the heirs of Joseph Hannah, deceased, and asks no relief against them, and also joins Reger and Chattaway, claiming interests adverse to each other in separate tracts. The bill does not show that Reger and Chattaway claim separate interests; on the contrary, if the averments are true, they are confederates or partners, and while each claim separate interests by deeds made to them separately, yet the bill shows that there is a secret understanding between them whereby their interests are joint; and that they are working together to defraud plaintiff of its title. The interests of the heirs of John B. Hannah, deceased, and of Joseph Hannah, deceased, being an undivided 1/12 interest in the 575 acres, are recognized by the plaintiff; these heirs are not complaining; their interests are not adversely affected. We see no reason why the demurrants should complain that they are made defendants. We hold, therefore, that the bill is not multifarious. This court, in dealing with the question of multifariousness in *Ice*

*& Storage Co. v. Conner,* 61 W. Va. 111, 55 S. E. 982, has said:

" 'Courts, in dealing with this question, look particularly to convenience in the administration of justice; and, if this is accomplished by the mode of proceeding adopted, the objection of multifariousness will not lie, unless the course pursued is so injurious to one party as to make it inequitable to accomplish the general convenience at his expense. So that, when we look to see if a bill is multifarious, the first question to be determined is, does the bill propose to reach the end aimed at in a convenient way for all concerned? And, if the mode adopted does accomplish the end of convenience, then the question arises, is any one hurt by it, or so injured as to make it unjust for the suit to be maintained in that form?' *Dillard* v. *Dillard,* 97 Va. 434, 34 S. E. 60; *Hill* v. *Hill,* 79 Va. 592; *Almond* v. *Wilson,* 75 Va. 623; *Nulton* v. *Isaac,* 30 Grat. 726.''

Other cases to the same or similar effect are, *Boyden et ux.* v. *Lancaster,* 2 Pat. & H. 198; *Sult* v. *A. Hochstetter Oil Co.,* 63 W. Va. 317, 61 S. E. 307; and *Depue* v. *Miller,* 65 W. Va. 120, 64 S. E. 740.

The third objection, that the bill shows that Chattaway has actual adverse possession of the 2216 acre tract, is not tenable. Mere acts of trespass do not constitute possession, and that is the only sort of possession Chattaway had that can be inferred from the bill.

We have already anwered the fourth objection, namely, that plaintiff has an adequate remedy at law.

The crux of the case and the real point raised by defendants' demurrers to the bill, is whether a deed exhibited with it, designated "Exhibit 18," supports plaintiff's allegation to the effect that it has the title to the lands in controversy. This makes it necessary to discuss the meaning and effect of that deed. If that deed is given the effect claimed by plaintiff, then the plaintiff has good title; if not, then the demurrants have an interest in the lands in controversy, unless their title thereto has been forfeited, as alleged in the bill. That deed is dated March 26, 1879.

In 1860 a patent was issued to Paul McNeel, George S. Ed-

miston and John Yeager for the 28,500 acres. No contro-
versy arises as to the interests of the McNeels and Edmistons.
The 1/3 interest of John Yeager therein passed by descent to
his seven heirs, prior to or about 1865. In 1853 a patent was
issued to Paul McNeel and David Hannah for the 2216 acre
tract; John Yeager appears to have been jointly interested
in this tract and the patentees and their heirs executed deeds
which finally vested in the heirs of John Yeager an undi-
vided 1/3 interest in this tract. In 1855 a patent was issued
to Paul McNeel and John Yeager and the eight heirs of David
Hannah, deceased, for the 575 acres, by which the said Mc-
Neel and John Yeager acquired each a 1/3 interest, and the
heirs of David Hannah, deceased, the remaining 1-3 of that
tract. So that the heirs of John Yeager, deceased, obtained
an undivided 1-3 interest in each of the three tracts. As
already stated, John Yeager had seven heirs, namely, Eliza-
beth Yeager Arbogast, Frances E. Kerr, Henry A. Yeager,
Brown M. Yeager, Paul M. Yeager, Eveline Yeager Beard,
wife of Josiah O. Beard, and Emma Yeager Beard, wife of
Michael O. Beard.

Exhibit No. 18 with the bill purports to be a deed dated
March 26, 1879, between George S. McNeel and wife, Mathew
Edmiston and wife, A. M. Edgar and wife, C. E. Beard and
wife, D. A. Penick and wife, Abram J. Edmiston and wife,
Richard M. Edmiston and wife, Andrew Edmiston and wife,
Elizabeth A. Arbogast and husband, Frances E. Kerr and
husband, Anna M. Beard and husband, Eveline M. Beard and
husband, Henry A. Yeager and wife, Brown M. Yeager and
wife, Paul M. Yeager, Alvin Clark and wife, Henry Clark
and wife, and Richard McNeel, as parties of the first part, to
D. A. Penick, trustee, party of the second part, and recites:
"That whereas the parties of the first part are the owners
of extensive tracts of land lying in Poahontas and Webster
Counties, West Virginia, as hereinafter more particularly set
forth which land they are desirous of selling, and whereas a
sale of said lands will be greatly facilitated as is believed by
vesting the title thereof in a trustee, with power to sell and
convey the same to the purchaser or purchasers and to con-
duct the necessary negotiations to that end which by reason

of the great number of parties interested therein as owners could not be otherwise so well accomplished now therefore, this grant and conveyance is made to the said D. A. Penick, of Rockbridge County upon the trusts and conditions hereinafter mentioned and declared, wherefore and in consideration of the premises and of the sum of five dollars paid by the party of the second part to the parties of the first part.''

There follow in the same deed nine separate grants, substantially as follows:

1st. George S. McNeel and wife and Mathew Edmiston and wife grant to said trustee Tract No. 1, containing 1320 acres.

2nd.   George S. McNeel and wife, A. M. Edgar and wife, C. E. Beard and wife, and D. A. Penick and wife grant to said trustee an undivided 1/3 in tract No. 2, containing 28,500 acres; the Edmistons with their wives grant an undivided 1-3 in the same tract; the seven Yeager heirs with their respective husbands or wives grant the remaining undivided 1/3 in the same tract.   As will appear hereafter, however, the plaintiff claims that but 4-7 of the Yeager interests, being 4-7 of 1/3, passed by this conveyance.

3rd.   George S. Neel and wife, A. M. Edgar and wife, C. E. Beard and wife, and D. A. Penick and wife grant to said trustee an undivided 1/3 of tract No. 3, containing 2460 acres; the Edmistons grant to said trustee the remaining 2/3 of said tract.

4th.   Alvin Clark and wife, Henry Clark and wife, and D. A. Penick and wife grant to said trustee tract No. 4, containing 2760 acres.

5th. — George S. McNeel and wife, A. M. Edgar and wife, C. E. Beard and wife and D. A. Penick and wife grant to said trustee tract No. 5, containing 1650 acres.

6th.   C. E. Beard and wife, D. A. Penick and wife, and Richard McNeel, each grant to said trustee a 1/4 of tract No. 6,, containing 2050 acres, and the Edmistons the remaining 1/4 in the same tract.

7th.   Richard McNeel, C. E. Beard and wife, and D. A. Penick and wife, each grant to said trustee a 1-4 of tract No. 7, containing 5450 acres, and the Edmistons grant the remaining 1/4 in the same tract.

8th.   George S. McNeel and wife, claiming to own a 1/4 of tract No. 8, containing 2450 acres, a like 1/4 in tract No. 9, containing 2216 acres, and a like 1/4 in tract No. 10, containing 430 acres; and C. E. Beard and wife, claiming to own a like 1-4 in the same   three   tracts; and A. M. Edgar and wife, claiming to own a like 1-4 in the same three tracts; and D. A. Penick and wife, claiming to own the remaining 1-4 in the same three tracts, grant said tracts to the said trustee.

9th.   George S. McNeel and wife, A. M. Edgar and wife, C. E. Beard and wife, and D. A. Penick and wife, the said McNeel claiming to own a 1/8 part of tract No. 11, containing 575 acres, the said Edgar and wife claiming a like 1/8 part, and the said Beard and wife claiming another 1/8 part, and the said Penick and wife claiming also an 1/8 part, grant to said trustee their respective interests, aggregating 4/8 of 575 acres; and Elizabeth A. Arbogast and husband, Frances E. Kerr and husband, Emma M. Beard and husband, Eveline Beard and husband, Henry A. Yeager and wife, Brown M. Yeager and wife, and Paul M. Yeager, each claiming a 1/14 part therein, grant said tract of 575 acres to said trustee.

It will be observed that the three tracts in controversy are the tracts designated in the 2nd, 8th and 9th grants, being tract No. 2 for 28,500 acres, tract No. 9 for 2216 acres, and tract No. 11 for 575 acres. The Yeager heirs who executed this deed actually conveyed their interests in the 28,500 acre tract; this will be discussed later.   They are not named as grantors in the specific grant of the 2216 acre tract; they are named as grantors in the specific grant of the 575 acre tract, so those who executed said deed actually conveyed their interests in that tract.

The deed was executed by Elizabeth Yeager Abrogast and husband, Frances Yeager Kerr and husband, Brown M. Yeager and wife and Paul M. Yeager, and properly acknowledged by each of them.    It appears also to have been signed but not acknowledged by Henry A. Yeager and Bertie, his wife, Michael O. Beard and Emma M. Beard, his wife, and Josiah O. Beard and (erroneously) Emma M. Beard.    The three

interests owned respectively by Henry A. Yeager, Eveline Yeager Beard and Emma Yeager Beard, as appears by other exhibits, were acquired by the plaintiff through other conveyances.

The only point in controversy arising under this deed as to the Yeager interests is whether or not the four Yeager heirs who properly executed the deed actually conveyed their interests in the 2216 acre tract, or if not, whether under the deed a power was granted to the trustee to convey their interests. Whether these four heirs actually conveyed their respective interests to the trustee, or if they did not, whether they were estopped by that deed from claiming their interests therein, we find it unnecessary to decide, as under the terms of the deed we find that the trustee was authorized to sell the several tracts and to make conveyances thereof, to receive the purchase money therefor, and to distribute the proceeds. The deed must be construed as a whole. Its general purpose appears to be to vest the title to all of these lands, and if not the title, the authority to convey the title in one person, to-wit, D. A. Penick, trustee; in other words, the various interests were pooled. No difference seems to have been made in the value per acre of the several tracts. The deed further provided that in case the purchaser or purchasers should be evicted from any portion of the land sold or lose said lands by reason of any defect in the title of the first parties, then the amount of the purchase price which the first parties shall be required to refund to such purchaser or purchasers shall be the average price per acre which the purchaser or purchasers may pay to the said trustee for the whole of the lands, which said trustee may sell to such purchaser or purchasers.

This deed was not a mere sale to the trustee of the lands in controversy, but the real purpose was to vest authority in the trustee as a matter of convenience, and enable him to make sale or sales of the various tracts. The consideration of $5.00 recited in the deed is a nominal consideration only. The Yeager heirs were doubtless by mistake omitted as grantors and undivided owners of the 8th grant, covering the 2216 acre tract, as they then owned an undivided 1/3 part of

that tract. The bill avers, however, that acting under authority of this deed, the trustee sold said lands or interests therein conveyed, including the 4-7 interest of the Yeager heirs, and the interest conveyed by him under said deed finally passed by successive conveyances to the plaintiff, and that the grantors or parties who executed said Exhibit No. 18 accepted their respective shares of the purchase money.

It is objected by counsel for the demurrants that Mrs. Arbogast and Mrs. Kerr were married women at the time of the execution of this deed and that they could not execute such power, if the deed is to have that construction; but by reference to chapter 67, section 12, Acts 1875, we find that a married woman might by power of attorney duly executed, acknowledged and certified, as prescribed in section 4 of that chapter, appoint an attorney in fact for her and in her name to execute and acknowledge for record any deed or other writing which she might acknowledge in person, and that every deed and other writing so executed and acknowledge by such attorney in fact in pursuance of said power should be as valid and effectual in all respects to convey the title and interests of such married woman in the real estate thereby conveyed and to bar her right of dower therein as if she had in person and in the manner required by the fourth section of said chapter, executed and acknowledged the same. While the deed does not name D. A. Penick as attorney in fact, but as a trustee, yet the mere name makes no difference; equity regards substance and not mere form. The subsequent conveyance made by the trustee of these lands shows that he acted under the power and authority conferred upon him by the deed. So we hold that this deed, Exhibit No. 18, conferred upon the trustee, so long as the authority therein was unrevoked, the right to convey the undivided interest of Elizabeth Yeager Arbogast, Frances E. Kerr, Brown M. Yeager, and Paul M. Yeager in the several tracts mentioned. The bill and exhibits further show that these interests passed to the plaintiff, as did likewise the undivided 3-7 the interests of the Yeager heirs which were not conveyed by Exhibit No. 18, thus vesting in the plaintiff all the right, title and interest of the

Yeager heirs in and to the tracts of 28,500 acres, 2216 acres and 575 acres.

As to the interest of the heirs of David Hannah, deceased, in the 2216 acres: the record clearly shows that all of David Hannah's interest in this tract was devised to Isabella Varner, Mary Snyder and Robert A. Hannah; and that their interests were acquired by the plaintiff through subsequent conveyances. As to the interests of David Hannah's heirs in the 575 acre tract, we think the record clearly shows that all the interests of these heirs, to-wit, Isabella Varner, Elizabeth Vanrennen, Mary Snyder, David Hannah, William B. Hannah and Robert A. Hannah, were acquired by the plaintiff and its predecessors in title, except that of John B. Hannah and Joseph Hannah, being the undivided 2/8 of a 1/3 part, or 1/12 of the 575 acres. The bill carefully deraigns the title to these several tracts of land from the Commonwealth of Virginia, and exhibits all the title papers, including various surveys, comprising 52 exhibits, covering with the bill approximately 300 pages. It would be needless to pursue this discussion further by inquiring into the effect of each exhibit, though we have made a careful examination of all of them. If the plaintiff's allegations in its bill are true, and for the purpose of this discussion they are admitted to be true, then the plaintiff has a good title to the surface and timber rights in the 28,500 acre tract, the 2216 acre tract, and in all of the 575 acre tract save and except an undivided 1/12 interest which it recognizes is held by the heirs of John B. Hannah and Joseph Hannah.

The demurrants point out as ground of demurrer that plaintiff is not sole owner of all of the lands in suit, in that it recognizes the heirs of John B. Hannah and Joseph Hannah as joint owners of an undivided 1/12 interest in the 575 acre tract. We see nothing in this objection. So far as we know, demurrants' claims may not affect the title of the Hannah heirs, but if they did, we see no reason why these heirs may not be made parties defendant. If this suit involved only the 575 acre tract and the Hannah heirs owned an undivided 1-12 interest, why could not the plaintiff, owning the remaining 11-12 interest, join them as defendants in

a suit of this character instead of making them parties plaintiff? They might be unwilling to incur the expense of joining in such suit as complaintiffs. Why should plaintiff be deprived of its equitable remedy under such circumstances We do not think it is. In the case of *O'Donnell* v. *McIntyre*, 37 Hun. (N. Y.) 615, affirmed in 116 N. Y. 663, 22 N. E. 1134, it was held: "One of several tenants in common may bring an action to remove a cloud upon the title of the land in which he has an interest." See also *Goldsmith* v. *Gilliland*, 24 Fed. 154; and 32 Cyc. 1348.

We, therefore, hold that the bill is sufficient in law and that the circuit court of Kanawha county was right in overruling the demurrer, and its decree so doing is affirmed, and this conclusion will be certified to the circuit court.

*Affirmed.*