HALL *v.* McLUCKEY, *et al.*

(CC 779)

Submitted April 10, 1951. Decided May 29, 1951.

*Scherer, Bowers & File* and *Clay S. Crouse*, for plaintiff.

*J. W. Maxwell, Kermit A. Locke*, for defendants.

LOVINS, JUDGE:

The Circuit Court of Raleigh County, West Virginia, sustained demurrers to plaintiff's amended bill of complaint, and certified the rulings made thereon to this Court.

The original bill of complaint in this suit by Hall, plaintiff, against McLuckey and Beckley Music & Electric Co., a corporation, hereinafter designated "McLuckey"

and "company", respectively, prayed for an injunction restraining McLuckey from managing the business of the company and from applying the funds of the company to his own use, the appointment of a special receiver to operate the business, an audit of the business of the company, certain items of discovery, a decretal judgment against McLuckey for any sum due from him, dissolution of the company, and sale of its assets.

A final decree entered by the Raleigh County Circuit Court granting the greater portion of the relief sought in the original bill of complaint has heretofore been before this Court upon appeal. The decree of the trial chancellor was reversed, and the case was remanded with directions to sustain the demurrer to the bill of complaint with leave to plaintiff to amend the bill. This Court held that although plaintiff had a right to maintain a suit for the appointment of a receiver of the assets of the company and its ultimate dissolution under Code, 31-1-81, 82, the allegations of the original bill of complaint were insufficient to warrant the drastic relief prayed for in the bill; that Cecil W. Lovell and Edith Gamble Basham, hereinafter designated "Lovell" and "Basham", respectively, allegedly holding shares of stock in the company, issued to them without authority, were necessary parties to the suit; and that there was a fatal omission on the part of plaintiff to aver that he had applied to the stockholders or the board of directors of the company for relief prior to the commencement of suit, or to show that such prior application would have been useless. *Hall* v. *McLuckey, et al.*, 134 W. Va. 595, 60 S.E. 2d 280.

Upon remand to the trial court, plaintiff filed an amended bill of complaint. It is unnecessary for the purposes of this opinion to restate in detail the proceedings formerly reviewed. Accordingly, our attention and discussion are principally concerned with the record as developed since the filing of the amended bill.

The original bill of complaint is made a part of the amended bill by reference. In addition to the relief orig-

inally sought, for which there is a renewed prayer, the amended bill prays that Lovell and Basham be made defendants to the amended bill; that Lovell and Basham be permitted to assign their stock to the company and the company be required to reimburse them to the extent of their investments therein; and that McLuckey be required to assign to the company sixty shares of stock allegedly issued to him without proper authority and contrary to the parol agreement as to ownership.

Plaintiff bases his claim for relief upon allegations of the violation by McLuckey of an oral agreement entered into between them prior to incorporation of the company, providing for equal and exclusive stock ownership, a $300.00 monthly salary for McLuckey as manager of the business, an equal sharing of the net profits of the business; and upon acts of mismanagement consisting of the application of the property and funds of the company to the personal use of McLuckey, and in his failure to provide for the holding of meetings of the stockholders and directors at the times and in the manner required by the by-laws of the company and the laws of the State of West Virginia.

Plaintiff alleges that although the by-laws, the pertinent provisions of which he sets forth in his bill, require annual meetings of the stockholders and directors on the second Wednesday of September in each year, none have been held since the first stockholders' meeting on October 19, 1944, an organizational meeting at which the plaintiff, defendant and L. L. Scherer were elected directors; that although notice of the regular monthly meetings of the board of directors is not required, notice is not dispensed with in regard to special meetings of the directors. Plaintiff alleges that he has not been notified of any meetings of the directors or the stockholders; that he had no actual knowledge of the holding of such meetings; that he had not waived notice thereof; and that he had not given anyone his proxy.

Plaintiff avers that the minutes of pretended meetings, which he was permitted to inspect, show that several of

such meetings of the stockholders and directors have taken place. The minutes of such a meeting of stockholders held on July 6, 1945, attended only by McLuckey and Lovell, recited that L. L. Scherer had defaulted in the payment of Stock Certificate No. 4, and that he would not fulfill the duties of secretary. C. W. Lovell was asked to assume the duties of secretary and treasurer at a salary commensurate with the work. McLuckey's salary as manager was set at $416.67 until an increase in salary was warranted by increased business. There is no allegation as to whether McLuckey and Lovell abstained from voting on the matters in which they had a personal interest. Minutes of one allegedly spurious meeting of the board of directors on July 8, 1946, do not show who was in attendance, but they are signed by McLuckey as president and Lovell as secretary and treasurer. At a similar meeting of the board on July 8, 1947, the minutes being signed by Lovell and McLuckey, McLuckey was commended for his service and his annual salary was increased to $6200. Attendance at the last mentioned meeting was not shown and plaintiff does not allege whether McLuckey abstained from voting on the action taken by the directors. At a pretended meeting on July 5, 1948, the board of directors purportedly increased defendant McLuckey's annual salary to $10,000, contingent on an anticipated gross business of $200,000 for the ensuing year. A minimum annual salary of $300.00 was voted for the acting secretary and treasurer. It is not alleged whether McLuckey and Lovell participated in this action.

Plaintiff charges that all of the meetings, hereinabove referred to, were improperly held because of lack of notice to him, and that the actions of the Board of Directors were invalid for the further reason that Lovell participated therein as a director when he had not been properly elected to that office, the plaintiff not having been legally notified of the stockholders' meeting at which such election occurred, and that there was an insufficient number of directors for legitimate action by the board,

the by-laws requiring a minimum of three directors. In this connection, plaintiff alleges that L. L. Scherer had not paid for the stock certificate which was issued to him, the certificate had not been delivered to him, and that therefore he had never been a stockholder in the company, which is a qualification set by the by-laws for membership on the board of directors. Thus plaintiff contends that he and McLuckey are the only lawful directors of the company.

Plaintiff alleges that the stock certificate book of the defendant company shows several issues of stock certificates which he charges are illegal for the reasons that authority for their issuance was not given at a proper meeting of the board of directors and that he had been denied his preemptive right to purchase such issues. Such certificates are: Certificate #1, for 10 shares, issued to Lovell; Certificate #2, for 10 shares, issued to Basham; Certificate #3, for 30 shares, issued to McLuckey; Certificate #4, for 10 shares, issued to L. L. Scherer; and Certificate #7, for 30 shares, issued to McLuckey. Plaintiff contends that a certificate for 104 shares, issued to him, and a certificate for 104 shares, issued to McLuckey, are the only lawful issues of stock, in view of the parol agreement with reference to equal and exclusive stock ownership, and that in violation of such agreement, defendant now holds more than 50% of the outstanding common stock of the company, possessing 164 shares out of 288 shares allegedly outstanding.

The plaintiff, upon information and belief, avers a number of transactions, which he contends constitute mismanagement by McLuckey, namely: That during the month of October, 1944, McLuckey borrowed from A. J. Adams the sum of $3,000, and that although such loan was McLuckey's personal obligation and was repaid by him in June, 1949, the interest thereon was paid by the delivery to Adams of certain merchandise, including a dishwasher, radio, disposall, and other goods; that during the Christmas season, 1948, the company delivered to

Samuel Thompson of Beckley, West Virginia, a Magnavox Radio-Phonograph of the value of approximately $875.00, and that payment for such merchandise was made by Thompson to McLuckey personally, none of the purchase money going to the company; that in 1949, several kitchen cabinets belonging to the company were delivered to the residence of J. M. Coram, a physician, and that McLuckey received payment from the physician for the same either in cash or as a credit against McLuckey's personal account owing the physician, the company receiving nothing in payment therefor; that in September, 1948, the sum of approximately $318.06 was paid out of the company's funds to the Geiger Upholstery for certain materials furnished and work performed for McLuckey; that during the months of January and February, 1949, certain electrical appliances were installed in the kitchen of Charles Levine, Jr., payment for which, in the amount of $1200.00, was made to McLuckey personally and not to the company; that in July, 1948, the company purchased two radiators from the Bluefield Supply Company for the sum of $131.58, which were installed in the home of McLuckey; that on various other occasions since 1944 certain articles of merchandise were delivered and installed in the home of McLuckey; that in the latter part of 1948, McLuckey was paid a bonus of $1200.00 out of the company's funds without proper authority; and that on other occasions similar bonuses have been paid to McLuckey without proper authority. Plaintiff charges that all such acts by the company, through McLuckey as its president and general manager, hereinabove stated, have unlawfully reduced capital assets of the company.

Plaintiff alleges upon information and belief that on several occasions and in particular on one occasion in 1948 or 1949, McLuckey cursed prospective customers and unlawfully assaulted one or more of such customers without justification and in a manner that would incur civil liability upon the company.

Plaintiff avers that it would have been useless for him

to apply to the shareholders of the company for relief from the wrongs complained of since McLuckey holds a majority of the outstanding stock, and that he could not appeal to the board of directors because only he and McLuckey are lawfully elected directors.

McLuckey and the company filed a joint and several demurrer to the amended and supplemental bill of complaint, on the grounds that it does not appear that the alleged misappropriations were without the apparent and actual scope of authority of McLuckey as manager of the corporation; that it is not alleged that the claimed acts of misappropriation were illegal transactions and were not done by the general manager in promotion of the general welfare of the company; that the bill is multifarious for the reason that it seeks in the same suit to have a partnership settlement between plaintiff and McLuckey in matters between themselves as individuals, with which the company has no interest, and at the same time seeks a dissolution of the company; that the alleged oral contract between the plaintiff and McLuckey cannot be pleaded or sustained because it is in conflict with the articles of incorporation; and that the allegations in the bill are insufficient to warrant the discovery prayed for.

Lovell and Basham filed their joint and several demurrer to the amended and supplemental bill of complaint on the grounds that the bill of complaint involves them as stockholders in expensive litigation to adjudicate a personal controversy between plaintiff and McLuckey; that the oral agreement between plaintiff and McLuckey is in conflict with the corporate charter and therefore cannot be enforced in this suit to the prejudice of the demurrants; that the bill of complaint admits the issuance to the demurrants of their stock certificates and therefore the plaintiff and the company are estopped from denying the ownership thereof; that such bill wholly fails to set up any reason for dissolution of the corporation, there being a mere disagreement between stockholders; and that it does not appear from the bill that

the corporation is insolvent and not exercising its franchise in a perfectly lawful manner without any damage to the plaintiff.

An additional demurrer of McLuckey and the company was filed, charging that the amended bill fails to disclose any breach or denial of any preemptive right existing in favor of the plaintiff to purchase the stock of the company; and that the bill fails to show an exhaustion of remedies available to the plaintiff through action by the company's board of directors.

The trial court sustained the demurrers to the amended bill of complaint, with leave to further amend the bill, and directed that the case be certified to this Court. The trial chancellor set forth his rulings as follows: (1) that it was questionable whether the total amount alleged to have been misappropriated constituted a material part of the funds or property of the defendant corporation; (2) that it was not sufficiently factually alleged in the plaintiff's amended and supplemental bill of complaint that proper application by the plaintiff to the stockholders or board of directors of the defendant corporation, for relief from the acts complained of, would have been useless; (3) that the other grounds of demurrer are not tenable.

The question of whether the total amount alleged to have been misappropriated is a material part of funds or property of the company is not determinative of the questions presented on this certificate. Plaintiff charges the misappropriation of the company's assets of the value of approximately $2500.00. If these allegations are sustained by proof, such acts of misappropriation would constitute mismanagement of the company and would justify the relief authorized by Code, 31-1-81, 82, under which the principal relief is sought herein. Moreover, we bear in mind that on demurrer facts well pleaded are treated as true.

The trial court erred in holding that facts are not sufficiently alleged in the amended bill to show that appli-

cation by plaintiff to a stockholders' meeting or the board of directors of the company for relief prior to the commencement of the suit would have been useless. The plaintiff is not required to seek redress through the regularly constituted agents and officers of a corporation in circumstances disclosed by the amended bill of complaint. *Crumlish* v. *Railroad Co.*, 28 W. Va. 623; *Rathbone* v. *Gas Co.*, 31 W. Va. 798, 8 S.E. 570; *Moore* v. *Railway Co.*, 80 W. Va. 653, 93 S.E. 762. The amended bill charges that plaintiff and McLuckey are the only lawfully elected directors of the company, and that the by-laws prohibit a director from voting on any matter in which he is interested. If the plaintiff and McLuckey are the only lawfully elected directors of the company, it is a foregone conclusion that such situation would result in a tie vote in the board on the question of granting plaintiff relief. Hence plaintiff is not required to apply to the board of directors for relief. It is also alleged that it would be useless to apply to the stockholders for relief since McLuckey owns a majority of the outstanding stock of the company. If the view is taken that the 80 shares of common stock were illegally issued, then Hall and McLuckey would own an equal number of shares of the common stock of the company, and an application by plaintiff to a stockholders' meeting, after the 80 shares of illegal stock have been eliminated, would likewise result in a stalemate. It follows, therefore, that the allegations of the amended bill of complaint satisfy the requirements discussed in the opinion of this Court when the case was here upon the former appeal. *Hall* v. *McLuckey, supra.*

In determining whether the amended bill is bad for multifariousness, there is no general and inflexible rule by which we can be governed. In cases involving that question, decisions have largely rested upon the circumstances of each particular case. Miller's Hogg's Equity Procedure, Third Edition, Sec. 156; *Park* v. *Adams,* 114 W. Va. 730, 173 S.E. 785; *Scott* v. *Realty Co.,* 106 W.Va. 304, 145 S.E. 586; *Crummett* v. *Crummett,* 102 W.Va. 151,

135 S.E. 16; *Boom & Lumber Co. v. Reger,* 90 W.Va. 252, 110 S.E. 709; *Arnold v. Knapp,* 75 W.Va. 804, 84 S.E. 895; *Depue v. Miller,* 65 W.Va. 120, 64 S.E. 740; *Sult v. Hochstetter Oil Co.,* 63 W.Va. 317, 61 S.E. 307. "Whether a bill in equity is multifarious often depends on the particular circumstances of the case, rather than upon any fixed rule of procedure; and when the subject matter is single and all the parties directly interested in it, the objection for multifariousness will be overruled, though the bill asserts two or more grounds of relief and tends to raise two or more issues, affecting the parties in divers ways." *Sult v. Hochstetter Oil Co., supra; Ross' Admx. v. Ross,* 72 W.Va. 640, 78 S.E. 789; *Coal & Coke Co. v. O'Neal,* 82 W.Va. 186, 95 S.E. 822. If the joinder of causes for relief does not result in injury to any of the parties thereto, so as to make it unjust for the suit to be maintained in such form, the bill is not bad for multifariousness. *Boom & Lumber Co. v. Reger, supra.* Wherever possible, the cost and delay attendant upon a multiplicity of suits will be avoided by permitting the joinder of demands for relief in one suit. *Park v. Adams, supra.*

Applying the foregoing principles to the amended bill in the case at bar, we are of the opinion that the bill should not be characterized as multifarious. It is true that the grievances which plaintiff asserts arise in large measure from the parol agreement which allegedly existed between Hall and McLuckey prior to incorporation of the company, the terms of which contract do not appear in the articles of incorporation. But the circumstances surrounding the relationship of the plaintiff and McLuckey are so closely interwoven with the affairs of the company, it is impossible to exclude such circumstances from consideration in determining the right to the relief sought herein. Plaintiff and McLuckey are the principal shareholders and are directors of the company. McLuckey, as president and manager, has been in complete control of the company's activities. If the plaintiff sustains by proof his assertion that Lovell, who holds ten shares of the company's stock, was illegally elected

to the board of directors, the only two lawfully constituted directors are plaintiff and McLuckey. Moreover, if the allegations of an irregular issue of stock to Basham and Lovell are established by proof, ownership of the corporation's stock will be reduced to the plaintiff and McLuckey. A determination, therefore, of any rights plaintiff may have under the parol agreement relating to the ownership and management of the company can be appropriately and conveniently made in the present suit.

The contention that the prayer for cancellation of the stock of Lovell and Basham and the allegedly unlawful issue of stock to McLuckey makes the bill multifarious is also untenable. Suits for rescission and cancellation of stock present an independent ground for equity jurisdiction. *Kimmell* v. *Twigg*, 88 W.Va. 531, 107 S.E. 206; *Cox* v. *Coal & Oil Investment Co.*, 61 W.Va. 291, 56 S.E. 494. But in the circumstances presented in this case it is appropriate if not necessary to dispose of that question in this suit. Any adjustment of the ownership of the corporate stock decreed by the trial court would vitally concern a special receiver if one should be appointed, and, in the event of dissolution of the company, would be determinative of the rights of the legal stockholders.

We conclude that the several grounds for relief, though distinct, are not of such an independent nature as to render a bill joining them in one suit bad on demurrer.

The allegations of the amended bill with reference to mismanagement and misappropriation are sufficient to support the prayer for discovery. It has been shown by these allegations that the evidence to be obtained thereby is material and essential to the main purpose of the bill. "Bills for relief may also contain prayers for the discovery of facts which are essential to the relief prayed for in the bill." *Wick* v. *Dawson*, 42 W.Va. 43, 24 S.E. 587. The contention that discovery is not warranted by the allegations of the bill is untenable.

The doctrine of ostensible authority cannot be asserted

in the instant case as a ground of demurrer. Such doctrine is sometimes invoked in transactions between an officer of a corporation and an innocent third party. 13 Am. Jur., Corporations, Sec. 890. The main controversy in the present suit, however, is between two stockholders and directors as well as the corporation. As between these parties, such principle is inapplicable. Upon further development of this case, by the introduction of evidence, the principle of apparent authority may be applicable to the sale of stock to Lovell and Basham. But its applicability will depend upon facts which must be established by proof. It was not necessary that plaintiff in his bill negative the theory of apparent authority to do the acts which he alleges were done without authority.

The plaintiff is not estopped by acquiescence and laches, from asserting the invalidity of the stock issue to Basham and Lovell. The burden of proving estoppel rests on Lovell and Basham, and it must appear affirmatively by clear, precise, and unequivocal evidence. *Campbell, et al.* v. *Lynch, et al.*, 88 W.Va. 209, 106 S.E. 869; *Water Co.* v. *Browning*, 53 W.Va. 436, 44 S.E. 267. "Every estoppel * * * must be certain to every intent and is not to be taken by argument or inference; and the facts upon which it is based must be clearly proven and not capable of bearing any other construction." *Campbell, et al.* v. *Lynch, et al., supra.*

The allegations with reference to the denial of plaintiff's preemptive right to purchase additional issues of stock are sufficient. Plaintiff avers that 80 shares of stock of the company were issued without his knowledge or authority. Failure by plaintiff to make demand or protest, in such circumstances, would not be a waiver of the right. *Riverside & D. Cotton Mills Co.* v. *Thomas Branch & Co.* (Va.), 137 S.E. 620. See Annotations, 52 A.L.R. 220.

The acts which the plaintiff contends were instances of mismanagement are alleged upon information and belief. But we think that the amended bill, when viewed

as a whole, meets the requirement laid down by the decisions of this Court that a bill of complaint, if sufficient to apprise a defendant of what he is called upon to meet in defense of the case, suffices. *Railroad Co.* v. *Traction Co.*, 56 W.Va. 18, 48 S.E. 746; *Zell Guano Co.* v. *Heatherly*, 38 W.Va. 409, 18 S.E. 611.

The decree of the Circuit Court of Raleigh County, sustaining the demurrers, is reversed and the case remanded to that court with directions to overrule the demurrers to the amended bill of complaint.

*Reversed and remanded with directions.*