## LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Scher's Adm'r., etc.

v.

Southern Realty Corp. et al.

Case No. B-9584

Scher's Adm'r, etc.

v.

Grace Realty Corp. et al.

Case No. B-9583

June 7, 1967

By JUDGE ALEX H. SANDS, JR.

Both of these cases are derivative stockholder's suits brought by plaintiff, a stockholder in the respective corporations under Code section 13.1-94. In each instance defendants demur upon the ground that the bill is multifarious in that it joins diverse independent actions which have no connection or association the one with the other.

In *Scher v. Southern Realty Corporation*, it is alleged that plaintiff is the duly qualified administrator c.t.a. of the estate of Alfred Spear, decedent; that his decedent, Alfred Spear, at the time of his death, owned 50% of the capital stock of the Southern Realty Corporation, the defendants C. M. Cooper, Florence Cooper and Belvidere Corporation owning the other 50%; that the defendants C. M. Cooper, Ellis Bernstein and Eileen Cowardin purport to be the duly constituted directors of Southern and

officers of the corporation; that the individual defendants aforesaid, together with defendant H. J. Bernstein or persons subject to their control or supervision have been in complete control of the affairs of Southern for the past several years; that serious differences of opinion have arisen between complainant and the aforesaid individuals who control the affairs of Southern; that no annual meetings have been held or called for several years; that the stockholders are presently deadlocked in voting power which threatens irreparable injury to the Corporation and that defendants are acting in a manner which constitutes an unlawful scheme to perpetuate themselves in office; that Bernstein, individually and acting through persons under his control, together with Dixie Home Furnishing, Inc., whose directors and officers are E. M. Bernstein and defendants C. M. Cooper and Ellis Bernstein, have become indebted to Southern by borrowing from Southern $11,604.00 and $56,190.00 without posting security therefor, that no arrangements have been made for either the payment of interest thereon nor upon the principal thereof; that Southern has loaned, without interest, other sums from corporate assets to persons and corporations controlled by the individual defendants, which loans to such persons and corporations, including those specifically described as to amount, constitute practically the entire assets of Southern; that the officers and directors of Southern have taken no steps to collect or protect said corporate assets.

The companion case of *Norman A. Scher v. Grace Realty Corporation* contains essentially the same allegations in respect to the control and methods of operation of Grace Realty Corporation, 50% of the stock in Grace being held by plaintiff and 50% by Bernie Corporation and Belvidere Corporation.

Plaintiff in each case, by way of relief, seeks the appointment of a receiver for Southern and for Grace, respectively, an accounting by the corporation for monies received and paid by the corporation during its period of operation, a prompt collection, based upon such accounting, of monies shown to be due the respective corporations by the various defendants both individual and corporate, that attorneys' fees be allowed against each corporation for the conduct of this litigation, that each corporation

be dissolved and the assets of each distributed to their respective stockholders.

Defendants contend that the bills are multifarious in that they seek to combine different causes of action by different parties against different parties.

In essence what the plaintiff seeks in each case is relief against the dissipation of the assets of the corporation by and for the benefit of the individual officers and directors of the corporation which relief cannot be had through the customary processes of corporate administration because of the deadlock in voting power which is alleged to result in the perpetuation in office of the present officers and directors. While it is true that plaintiff seeks the accomplishment of this single purpose (i.e. prevention of further dissipation of corporate assets and the recoupment of those already allegedly dissipated) by several different means, this fact does not change the basic nature of this proceeding which involves but one continuous transaction, having a single purpose.

Of the three categories of multifariousness discussed by Mr. Lile (*see* Lile's Equity Pleading & Practice, 3rd ed. pages 182-185) that charged by defendants as the grounds for their demurrers falls under Class #3, i.e. where several distinct and disconnected claims (whether by one or several plaintiffs) are asserted against several defendants, but all of the defendants are not interested in all the matters litigated.

In application, however, this classification is not as broad as it might appear. A comparison of two cases from Virginia, one State and one Federal, furnish a guide by which the merit of these demurrers can be judged.[1]

In *Brame v. Guaranty Finance Co.*, a disgruntled party claimed, among other things, to have been fraudulently enticed by the incorporators to commit himself under a stock subscription. What plaintiff was actually after was a rescission of his stock subscription and the return to him and cancellation of his unpaid notes which he

---

[1] Cf. Brame v. Guaranty Finance Co., 139 Va. 394 (1924), and Barcus v. Gates, 89 F. 783 (4th Cir. 1898).

had given in payment for the stock subscription.[2] This bill of complaint, however, in addition to seeking said rescission, sought (1) to recover a debt against the bankrupt corporation for expenses incurred by him in and about the company's business, (2) to recover money he had paid out on behalf of the company, (3) to recover *for* the company (although it was in bankruptcy with a trustee having been appointed) alleged claims against another company, (4) to recover *against* the bankrupt company claims allegedly due by it to such other company, (5) to have specific performance decreed against an individual alleged to have agreed to take over his obligations under his stock subscription, (6) to have specific performance against still other individuals alleged to have agreed to assume the obligation of the individual mentioned in # 5, *supra*, to take over complainant's commitments under the stock subscription, (7) to recover *for* the bankrupt corporation against an attorney an amount allegedly lost to the bankrupt company through his negligence, and other claims completely and totally unrelated to the principal suit for rescission of the stock subscription. The Court, in holding the bill to be multifarious said:

> However, even though it be conceded that a stock subscriber is given a right to sue for a rescission of the contract under this section, the same could not avail the appellant, as this is not a suit brought for the sole purpose of rescinding a contract on the ground of fraud, against the trustee, assignee, or receiver as the sole defendant. On the contrary, the bill seeks to avoid contracts in one instance and to enforce them in another; to conserve property in one instance and to distribute it in another, to obtain a judgment for money in one instance and to compel the restitution of money in another.

In conclusion the Court says:

---

[2] At the time of institution of suit the corporation had gone into bankruptcy and a trustee had been duly appointed.

That the bill contains distinct and independent causes cannot be gainsaid. And while a court of equity will, in order to prevent a multiplicity of suits, and in order to attain the ends of justice, permit many things to be done in one suit; yet there are well established rules which must be followed, and *there must be a causal connection between the things sought to be done.*

In *Barcus v. Gates,* plaintiffs alleged that the individual defendants owning and controlling Virginia Marl Phosphate Company (hereinafter called "Virginia") found that the tract of land (called "Northbury tract") from which they expected to get phosphate was worthless for this purpose; that defendants thereupon created a dummy corporation under the name of American Plant-Food Co. (hereinafter called "American") for the sole purpose of selling to American at an excessive valuation, the worthless Northbury tract; that by substituting doctored samples of soil defendants got a favorable chemical analysis of Northbury tract and having fraudulently induced plaintiffs to purchase stock in American, used the purchase price to pay for the Northbury tract and then appropriated the money to their personal use and improperly reserved to themselves a $27,000.00 lien (part of the purchase money) in the deed from Virginia to American. The relief sought was: (1) an accounting of all monies paid into the treasury of American by plaintiffs and defendants and that their respective rights therein be ascertained; (2) that plaintiffs' contract of subscription to the stock of American be cancelled and rescinded; (3) that the $27,000.00 lien of defendants be decreed fraudulent and cancelled; (4) that a statement of the assets and liabilities of American be had and the company be declared insolvent; (5) that a decree be rendered against each of the individual defendants in favor of plaintiffs for the sums paid by plaintiffs into the treasury of American; (6) that the sum so found due plaintiffs be declared a lien on the Northbury tract, that it be sold and the proceeds applied first to any indebtedness of American and second to plaintiffs; (7) that a judgment for any

deficiency be rendered in favor of plaintiffs against defendants; (8) that a receiver for American be appointed.

Defendants demurred upon the ground that the bill was multifarious. The Court of Appeals, reversing the district court's action in sustaining the demurrer said:

> The complainants allege that this was all one scheme, of which the incorporating of the American Plant-Food Company was part. The allegations make it one continuous transaction, having one purpose.

The Court, in approving the language of the Massachusetts Court in *Salvige v. Hyde*, 5 Mass. 146, states the true rule for determining whether or not a bill is multifarious as follows:

> If the object of the suit be single, but it happens that different persons have separate interests in distinct questions which arise out of that single object, it necessarily follows that such different person must be brought before the Court, in order that the suit may conclude the whole object.

While it is impossible to devise any general yardstick by which multifariousness can be determined, the most sensible concept to adhere to in considering any given case appears to be that when the subject matter is single and all of the parties directly interested in it, the objection for multifariousness will be overruled, although the bill asserts two or more issues affecting the parties in different ways.[3] Applying this concept to the cases at bar it is perfectly apparent that the single issue is whether or not the assets of Southern in the one case and of Grace in the other are being dissipated to the detriment of plaintiff stockholder. All elements of relief sought in the bills appear ancillary to the determination of this single issue. The demurrers will, accordingly, be overruled.

---

[3] See Hall v. McLuckey, 65 S.E.2d 494 (W.Va. 1951).